OSCAR PADRÓ COLLADO y EUROPA BONETA DE PADRÓ, demandantes y recurrentes, *v.* RAFAEL ESPADA, GILDA GONZÁLEZ DE ESPADA y la SOCIEDAD DE GANANCIALES compuesta por ellos, haciendo negocio como SUPERMERCADO 65 DE INFANTERÍA, demandados y recurridos.

*Número:* R-80-497     *Resuelto:* 15 de mayo de 1981

*Pedro Soto Ríos, Ana T. Ramírez Padilla* y *Jorge L. Ruiz Rivera,* abogados de la parte recurrente; la parte recurrida no compareció.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Los socios dueños del "Supermercado 65 Infantería" suscribieron el 15 agosto, 1979 un documento ante notario titulado Reconocimiento y Modificación de Sociedad mediante el cual el socio Padró Boneta vendió a Espada (ya dueño del 50% del haber social) su participación de 25% por precio aplazado de $15,000, y en el mismo acto el vendedor cedió dicho crédito a los demandantes Padró Collado y esposa; y el comprador Espada, sin concurso de su esposa Gilda González, se obligó a pagar la deuda a partir del 1 agosto, 1979 en plazos mensuales de $500.00 con interés al 9% anual. El cesionario del crédito dedujo

acción para el cobro de $12,300 de principal impagado contra Espada y su esposa Gilda González. El marido demandado no contestó la demanda y eventualmente se dictó contra él sentencia en rebeldía el 3 octubre, 1980. Su esposa Gilda opuso la defensa de falta de consentimiento a la operación acordada por su marido y la sala de instancia estimó el planteamiento por sentencia sumaria que desestimó la demanda contra ella y la sociedad de gananciales.

Recurrió en revisión la parte demandante insistiendo en que tanto la mujer como la sociedad de gananciales le responden de su crédito por disposición del Art. 1308 del Código, 31 L.P.R.A. sec. 3661, o en la alternativa del Art. 1310 (31 L.P.R.A. sec. 3663) en su párrafo 3.[1] La decisión concierne primordialmente al ejercicio del comercio por cualquiera de los cónyuges bajo la legislación de 1976 que reformó la institución de gananciales, por lo que este recurso suscita más bien la aplicación y eficacia del párrafo 3 del Art. 1313 (31 L.P.R.A. sec. 3672) incorporado al régimen por Ley Núm. 51 de 21 mayo, 1976.

La igualdad[2] promovida y ordenada por la Reforma de 1976 no se logra recortando las facultades que anteriormente se centraban en el marido como exclusivo administrador de la sociedad de gananciales, sino propiciando el acceso de la mujer a los mismos derechos, o a idéntica participación en autoridad para disponer de los bienes sociales. Así, en lo que respecta a obligaciones de dinero, está reglado en el Art. 1308 del Código, 31 L.P.R.A. sec.

---

[1] Art. 1310

    "... . . . . . . .

    "Sin embargo, el pago de las deudas contraídas por el marido o la mujer con anterioridad al matrimonio, y el de las multas y condenas que se le impongan, podrá repetirse contra los gananciales después de cubiertas las atenciones que enumera la sec. 3661, si el cónyuge deudor no tuviese capital propio o fuera insuficiente; pero al tiempo de liquidarse la sociedad se le cargará lo satisfecho por los conceptos expresados."

[2] Nuestro actual régimen igualitario satisface a plenitud la exigencia constitucional de igual protección de las leyes para marido y mujer. *Kirchberg* v. *Feenstra*, 101 S.Ct. 1195 (1981).

3661, despúes de su enmienda de Ley Núm. 51 de 21 mayo, 1976: Serán de cargo de la sociedad de gananciales (1) "Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges" y (6) "Los préstamos personales en que incurra cualquiera de los cónyuges."

◼ Tampoco tuvo la Ley Núm. 51 de 1976 el propósito de disminuir la capacidad de un cónyuge dedicado al comercio para obligar los bienes gananciales, cuando expresamente adicionó un tercer párrafo al Art. 1313 (31 L.P.R.A. sec. 3672) que dice:

> El cónyuge que se dedicare al comercio, industria, o profesión podrá adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge. No obstante, será responsable por los daños y perjuicios que pudiere ocasionar por dichos actos a la sociedad legal de gananciales. Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad legal de gananciales.

Mucho antes de que así se legislara, viviendo dentro de la estructura unitaria de la sociedad conyugal, una mujer casada, sin el concurso de su marido, pudo dedicarse al comercio y la industria operando un salón de belleza y este Tribunal reconoció como actos incidentales y propios de su actividad comercial, para los que no se requería consentimiento (ni expreso ni tácito) de su marido, tomar en arrendamiento un inmueble y subarrendar parte del mismo. Sentenció este Tribunal: "Cuando la demandante tomó en arrendamiento una casa, para establecer en ella un salón de belleza, realizó un acto necesario para la instalación y explotación de los negocios inherentes a dicha clase de establecimientos. Y cuando sub-arrendó parte del local, con la idea de reducir los gastos generales del negocio emprendido, realizó también otro acto de comercio relacionado con el mismo negocio." *Silva* v. *Corte*, 57 D.P.R. 725, 729 (1940). Tan justa interpretación se produjo

vigente el Art. 93 que simplemente proveía entonces: "La mujer puede por sí contratar y comparecer en juicio para lo que se refiera . . . al ejercicio de una profesión, cargo u ocupación"; sin necesidad de recurrir a la autorización provista por el Art. 6 del Código de Comercio, 10 L.P.R.A. sec. 1006. bajo el cual se obligan los bienes gananciales a las resultas del ejercicio del comercio o industria por la mujer, cuando mediare el consentimiento expreso o tácito del marido. La voluntad del marido de que los gananciales no queden obligados debe expresarse afirmativamente, [3] notificándolo por escrito "debidamente identificado" a su mujer y al Registro Mercantil.

■ Casi medio siglo después, con la diáfana disposición del Art. 1313 transcrita, no puede cuestionarse la facultad del marido comerciante aquí demandado para. obligar los bienes de la sociedad conyugal en operación incidental y propiamente inherente a su negocio. Al igual que en *Silva*, ante, el acto del demandado-recurrido Espada obligándose, sin concurso de su esposa, al pago de los $15,000 de precio aplazado, estaba claramente comprendido en la facultad concedida por el Art. 1313, párr. 3 al cónyuge que se dedica al comercio, para disponer por justa causa de los bienes muebles de la sociedad de gananciales. En su negocio de supermercado, la compra de la participación de 25% de su socio Padró Boneta es parte natural del desarrollo de la empresa, íntimamente ligada a su interés en el negocio pues con dicha operación aumentaba a 75% su control del supermercado y probablemente evitaba la entrada de un extraño a la sociedad. Es meridianamente claro que su adquisición del 25% perteneciente al socio vendedor, y su obligación de pagar los $15,000 de precio aplazado, son operaciones de justa causa con bienes muebles dedicados *a los fines del comercio* que es el

---

[3] En casos en que el marido jamás expresó su voluntad de que dichos bienes no quedaran afectos a las resultas de dicho comercio o negocio. la sociedad de gananciales responde. *Quiñones* v. *Corte*, 59 D.P.R. 438 (1941).

criterio de disposición unilateral del citado párr. 3 del Art. 1313. Se argumenta que Espada excedió su facultad porque un comerciante en productos de consumo que vende en un supermercado, no es comerciante en compra y venta de participaciones en sociedades. Ya *Silva* v. *Corte*, supra, refutó esta aseveración en principio al estimar parte del ejercicio del comercio, por la dueña de un *beauty parlor*, que no requiere concurso del cónyuge, el arrendamiento y sub-arrendamiento del local tomado para el negocio. El criterio de extralimitación añade e introduce en la ley un concepto de distinto tráfico o género que no tiene el citado artículo en su simple referencia a bienes muebles dedicados a los fines del comercio; y le niega vigor y eficacia a la necesaria libertad de acción del cónyuge comerciante que bajo el actual estado de derecho compara en posición y poder al socio gestor de una sociedad regular.[4] El legislador se cuidó de no entorpecer el ejercicio del comercio por un cónyuge, por naturaleza una actividad que demanda agilidad y flexibilidad en un dilatado mercado de continuas fluctuaciones, con trabas mayores que derrotarían la iniciativa personal. No es momento de retroceder en la inalterada secuencia de liberalidad que refleja la consideración por este Tribunal de la autonomía de los cónyuges en *Lanausse* v. *Silva, etc.*, 84 D.P.R. 546 (1962). Las prohibiciones formales para ejercer el comercio no son de interpretación estricta. *Martínez Arias* v. *Rivera*, 86 D.P.R. 173, 176 (1962). Otra línea de interpretación, confrontada con la prohibición de disponer de bienes muebles de la sociedad de gananciales, sin el consentimiento escrito del otro cónyuge, estaría cargada con un potencial de parálisis de la rutina económica de la sociedad inducida por un interminable intercambio de firmas.

---

[4] Véanse incisos 1 y 6 del Art. 1308 (31 L.P.R.A. sec. 3661), según enmendado por Ley Núm. 51 de 21 mayo. 1976, *supra*.

■ Nunca fue intención de la Asamblea Legislativa imponer trabas absurdas conducentes a la abolición de toda iniciativa personal de los cónyuges en el manejo y gobierno de los bienes de la sociedad. De ello da fe el historial legislativo de esta medida(⁵) con las intervenciones de la Representante Sra. Olga Cruz de Nigaglioni,

(⁵) La discusión y análisis del proyecto resultante en Ley Núm. 51 de 21 mayo, 1976, ocuparon la sesión de la Cámara del 22 mayo, 1975 con las siguientes expresiones relevantes:

"SRA. CRUZ DE NIGAGLIONI: Sí, ese es el inciso 6, que se le añade al artículo 3608, que habla de las obligaciones a cargo de la sociedad legal de gananciales. El problema es el siguiente, perdone el compañero que le dé la espalda, que el proyecto dispone que cualquiera de los cónyuges puede unilateralmente tomar dinero a préstamo. Si puede tomar dinero a préstamo, cualquiera de los dos obviamente la sociedad a que pertenece por ser un acto de un miembro de esa sociedad, tiene que responder de esos actos de cada uno de ello.

". . . . . . . .

"SR. BERMÚDEZ RIVERA: Eso quiere decir, de que, por ejemplo, la esposa va y toma un préstamo de tres mil, cuatro mil, cinco mil o diez mil dólares, y se va para los Estados Unidos, sin el consentimiento del esposo, [¿]los bienes que deje en Puerto Rico responderían por ese préstamo que hizo ella?

"SRA. CRUZ DE NIGAGLIONI: Desde luego, o sea, son los bienes de la sociedad conyugal, porque responde de las actuaciones de cualquiera de los dos cónyuges que pertenecen a esta sociedad conyugal. Lo mismo puede ocurrir de la otra manera, que sea el hombre el que coja el préstamo que se vaya a Estados Unidos, y la mujer se quede aquí y tenga que pagarlo ella en igualdad de condiciones.

"SR. BERMÚDEZ RIVERA: Para otra pregunta, si me lo permite.

"SRA. CRUZ DE NIGAGLIONI: Adelante.

"SR. BERMÚDEZ RIVERA: Para adquirir bienes muebles, por ejemplo, que el esposo adquiera un lancha, [¿] necesitaría el consentimiento de la esposa para esa compra?

"SRA. CRUZ DE NIGAGLIONI: [¿]Para adquirir bienes muebles? No.

"SR. BERMÚDEZ RIVERA: Y no hay . . .

"SR. JARABO: Señor Presidente, para unas preguntas.

"SR. PRESIDENTE A C C: Compañero Jarabo.

"SR. JARABO: En esto de las relaciones de administración en los bienes gananciales, se habla y se discute sobre la capacidad para adquirir, gravar y obligar, o enajenar bienes de la sociedad de gananciales. [¿]En qué, altera, si en algo, la capacidad para adquirir bienes de cada uno de los cónyuges, según están en el ordenamiento actual?

"SRA. CRUZ DE NIGAGLIONI: Vuelvo y repito, que no altera. No la altera porque actualmente por jurisprudencia la mujer puede adquirir. Lo único es que cuando la adquisición es onerosa tiene que firmar el marido. Ahora, el hombre si

Presidenta de la Comisión Jurídico Civil de la Cámara, identificada como principal propulsora de la reforma del Código Civil en el área de derechos de la mujer.

son bienes inmuebles, el hombre también está en igualdad de condiciones en cuanto a los inmuebles en la adquisición si es onerosa. Si no es onerosa, pueden adquirir libremente.

"SR. JARABO: O sea, que cuando la adquisición tiene, por ejemplo, una obligación a seguir pagando . . .

"SRA. CRUZ DE NIGAGLIONI: O sea, una hipoteca, eso es lo que quiere decir onerosa, o sea, una hipoteca, una obligación de otra índole un usufructo podría ser, en un momento dado sobre un bien inmueble. Cualquier cosa que sea una carga contra el bien inmueble que se adquiere.

"        .        .        .        .        .        .        .

"SR. JARABO: La pregunta, compañera, una vez enmendado el inciso 1, en qué quedaría todas las deudas y obligaciones contraídas durante el matrimonio por el marido o la mujer, una vez enmendado eso, cuál es el propósito del inciso 6 que señalé.

"SRA. CRUZ DE NIGAGLIONI: Es más bien, para fines de aclaración, Para que quede claro que la mujer puede tomar dinero a préstamos, o sea, quede clara la capacidad de la mujer para adquirir crédito. Y a los fines de que esa parte quede clara, se le añade el inciso 6, para disponer, que lo que obtenga en crédito o en obligación en esa forma, obliga a la sociedad legal de gananciales. Es más bien para que estén bien claro y no haya lugar a confusión, no para nosotros, sino para fines de terceras personas, para fines de instituciones bancarias.

"SR. JARABO: O sea, especifica que uno en las deudas de obligaciones incluye también préstamos personales sin el consentimiento del otro.

"SRA. CRUZ DE NIGAGLIONI: Exacto, de ninguno de los dos. O sea, de manera que quede clara en ese aspecto y facilite la obtención del crédito.

"        .        .        .        .        .        .        .

"        .        .        .        .        .        .        .

"SR. JARABO: Hay una enmienda en el informe que habla de que la adquisición o disposición de los bienes muebles dedicados a esos fines, cuando éste se dedica al comercio e industria, profesión u ocupación, o sea realmente cuando no es un empleado. Prácticamente se cubre todo lo demás.

"SRA. CRUZ DE NIGAGLIONI: Si, eso está incluido Esa enmienda, se incluyó precisamente para darle amplitud a los actos de comercio, mayormente de industrias, comercio, profesiones; de manera que facilite el crédito y facilite las transacciones económicas en nuestro sistema.

"SR. JARABO: Lo que me preocupa en primer término, de esa disposición, es que dice, 'podrá adquirir' como si le estuviera concediendo una facultad que hemos dicho aquí que la tiene de todas formas. O sea, dice 'disponiéndose que el cónyuge este que se dedica al comercio e industria, profesión u ocupación, podrá adquirir o disponer de los bienes muebles, etc.; pero pueden adquirir bienes muebles', ¿Es correcto eso?

"SRA. CRUZ DE NIGAGLIONI: Sí en esa parte los dos son iguales. La única

64

Al aprobar estas enmiendas igualitarias en lo que concierne al ejercicio del comercio por cualquiera de los cónyuges, la Asamblea Legislativa ratificó la precursora jurisprudencia de este Tribunal. No ha sido difícil la reforma justiciera, ni opera la misma como injerto extraño que hiere las bases de nuestro Derecho civil común, y sí más bien como renovada afirmación de Art. 22 del Título Preliminar: "La ley civil es igual para todos, sin distinción

prohibición, es en la disposición de los bienes. Es donde entrarían las excepciones.

"SR. JARABO: Me refiero a que todos los cónyuges, no solo dentro de un matrimonio en que uno de ellos se dedique al comercio, sino que todos los que estén dedicados al comercio e industria, profesión, ocupación . . . .

"SRA. CRUZ DE NIGAGLIONI: Todos pueden adquirir bienes. En cuanto a eso, no se cambia el régimen.

"SR. JARABO: En eso abunda, realmente ahí. Entonces, se añade aquí un requisito, de cuándo es que se puede disponer de esos bienes muebles, dedicados a esos fines o al instrumento de trabajo. Por justa causa, [¿]qué incluiría?

"SRA. CRUZ DE NIGAGLIONI: Bueno, la justa causa incluiría, que vaya con la razonabilidad de los actos o de la ocupación, negocio, profesión, etc.; a que están dedicados esos bienes. O sea, que vamos a decir, una persona que tiene un negocio, que tiene necesidad de hacer unas disposiciones de bienes muebles para fines de su propio negocio, pues lo puede hacer. Eso, la justa causa, lo que contempla ahí, es que no se vaya a dilatar una fortuna por ejemplo. O sea, que no vaya a utilizar bienes muebles de una industria, o de un negocio de un matrimonio, o sea, perteneciente a un matrimonio, para fines ajenos al negocio, y para fines ajenos a la agencia familiar, al contrato conyugal.

"SR. JARABO: Pero quería decir entonces, que pensando ahora en el momento de liquidación de una sociedad de gananciales, en que uno de los cónyuges haya enajenado bienes muebles bajo esta disposición, sin el consentimiento del otro, pueden haber sido decisiones equivocadas.

"SRA. CRUZ DE NIGAGLIONI: Desde luego, pueden haber sido decisiones equivocadas, pero la equivocación de buena fe, vamos a decir, que calculó mal, que un negocio salió mal. Eso es el curso normal de un negocio, o sea, el riesgo normal. La disposición va más bien a cuestiones de fraude, a cuestiones de mala administración de parte del cónyuge que tiene el negocio o el control de los bienes.

"SR. JARABO: O el intento deliberado de enajenar para sacar del patrimonio.

"SRA. CRUZ DE NIGAGLIONI: Exactamente.

"SR. TIRADO DELGADO: La pregunta es la siguiente: Si yo tengo un automóvil y lo quiero vender, ese automóvil no lo utilizo para mi trabajo, [¿]necesito la firma de mi esposa?

"SRA. CRUZ DE NIGAGLIONI: No la necesita." *Diario de Sesiones de la Cámara*, 22 mayo, 1975, págs. 138–166.

de personas ni de sexos . . ."; ni ha quedado afectada la libre opción de los contrayentes para elegir entre el régimen legal de gananciales, y las reglas propias para el gobierno de sus bienes pactadas en capitulaciones matrimoniales.

La deuda contraída por el marido Espada en pago de precio de la participación de 25% del Supermercado 65 Infantería por él adquirida de un socio, fue una consecuencia normal y operación inseparable de su dedicación al comercio, un acto propio de administración de la sociedad por él compartida para el cual no necesitaba previa aprobación ni concurso de su cónyuge, por lo que está comprendido entre las obligaciones "de cargo de la sociedad de gananciales" a tenor del Art. 1308(1) enmendado.

*Con estos antecedentes y fundamentos se revoca la sentencia revisada y en su lugar se dictará otra estimando la demanda y condenando tanto a la recurrida Gilda González como a la sociedad de gananciales Espada-González a pagar el balance de deuda reclamado por la parte recurrente.*

Los Jueces Asociados Señores Torres Rigual y Martín concurren en el resultado, y éste último emitió un voto concurrente. El Juez Asociado Señor Negrón García disiente con opinión.

—O—

Voto concurrente del Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 15 de mayo de 1981

Concurro con el resultado de la opinión del Tribunal por entender que, bajo las circunstancias de este caso, la sociedad de gananciales debe responder de la deuda incurrida por el cónyuge codemandado Espada en la transacción comercial, mediante la cual adquirió una participación o interés adicional en la sociedad en la que

ya poseía un 50%. El Art. 1313 del Código Civil autoriza al cónyuge que se dedicare al comercio a adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge. Art. 1313, según enmendado por la Ley Núm. 51 de 21 de mayo de 1976 (31 L.P.R.A. sec. 3672). Tal interés en una sociedad se considera, respecto a cada uno de sus miembros y mientras la misma subsista, como un bien mueble por disposición de ley —Código Civil, 1930, Art. 268— y siendo un bien mueble dedicado a los fines del comercio de uno de los cónyuges, es susceptible de adquisición o disposición por dicho cónyuge por justa causa sin consentimiento del otro cónyuge. *Id.*, Art. 1313. Tratándose de una transacción para la cual no se requiere el consentimiento de ambos cónyuges, la sociedad queda obligada en este caso por la actuación del esposo.

No estoy preparado, sin embargo, para aceptar la responsabilidad *absoluta* de la sociedad de gananciales respecto a (1) *"Todas* las deudas y obligaciones contraídas durante el matrimonio por *cualquiera* de los cónyuges" y (2) "Los préstamos personales en que incurra *cualquiera* de los cónyuges", *Id.*, Art. 1308(1), (6), por lo que reservo mi dictamen sobre ello para un caso apropiado. (Énfasis suplido.)

—O—

Opinión disidente del Juez Asociado Señor Negrón García

San Juan, Puerto Rico, a 15 de mayo de 1981

El esfuerzo legislativo reciente de nivelar e igualar jurídicamente a la mujer y al hombre en la dinámica socioeconómica del matrimonio a través del régimen de coadministración y ciertas restricciones a los cónyuges para disponer unilateralmente bienes muebles o inmuebles, no sólo queda paralizado con la decisión de hoy, sino que retrotrae adversamente por medio siglo la evolución del feminismo lograda en esa dirección.

La razón de decidir de la mayoría se fundamenta en caracterizar y validar errónea y apriorísticamente, como "operación incidental y propiamente inherente a su negocio", la compraventa por el marido de una participación o interés social a espaldas y sin el consentimiento de su esposa. Los antecedentes fácticos se originan el 15 de agosto de 1979, en que Oscar Padró *Collado*, Europa Boneta de Padró, Oscar Padró *Boneta*, Rafael Espada y Willie Bernard suscribieron ante notario documento denominado *Reconocimiento y Modificación de Sociedad*, mediante el cual Espada —poseedor entonces del cincuenta por ciento (50%) de la participación de una sociedad dedicada a explotar el establecimiento comercial "Supermercado 65 Infantería"— compró el veinticinco por ciento (25%) perteneciente a Padró Boneta por $15,000.00. En el mismo documento Padró Boneta cedió a Oscar Padró Collado y a Europa Boneta de Padró ese crédito. Espada, *sin la anuencia de su esposa Gilda González*, se obligó a satisfacer la deuda a base de $500.00 mensuales más intereses sobre el balance al nueve por ciento (9%) comenzando el 1ro de agosto de 1979. Pagó $2,700.00 en total, dejando al descubierto $12,300.00 de principal.

Radicada demanda en cobro de dinero contra "Rafael Espada y *Gilda González de Espada por sí* y como *coadministradores* de la Sociedad de Gananciales compuesta por ellos, ambos h/n/c Supermercado 65 Infantería", y emplazados ambos cónyuges, sólo contestó[1] la co-demandada Gilda González, quien solicitó la desestimación bajo el fundamento de no haber consentido ni dado su aprobación a dicha transacción.

Mediante el vehículo procesal de sentencia sumaria, el foro de instancia desestimó la demanda contra Gilda González y la Sociedad de Gananciales compuesta por ella

---

[1] En 17 de abril de 1980 se anotó la rebeldía a Rafael Espada, dictándose sentencia el 3 de octubre de 1980.

y Rafael Espada, bajo el razonamiento de que era menester, y no se había obtenido, su concurso para que ella y la Sociedad de Gananciales Espada-González quedaran obligadas. Acordamos revisar.

La parte demandante-recurrente nos propone la tesis de que ambos responden por el pago de esta deuda, argumentándonos que, por la naturaleza de esa transacción, Espada podía realizarla sin el consentimiento de ella, y, por ende, la Sociedad Legal de Gananciales debe satisfacerla bajo el Art. 1308 del Código Civil, 31 L.P.R.A. sec. 3661. En la alternativa, de no ser ello procedente, nos discute su obligatoriedad bajo el Art. 1310 (31 L.P.R.A. sec. 3663).

El análisis de esos planteamientos a la luz de la nueva legislación en el ámbito de la sociedad conyugal requiere la formulación y respuestas de las siguientes interrogantes: ¿Es válida la transacción realizada por Espada sin el consentimiento escrito de su conyuge?; ¿Por su naturaleza, requería el consentimiento por escrito de ambos?; ¿Debe responder Gilda González por tal obligación en su carácter personal?; y ¿Viene obligada la sociedad legal de gananciales Espada-González a satisfacer la deuda?; y si en la afirmativa, ¿en qué forma?

I

## Validez de la Transacción

En *L. Dershowitz and Co., Inc.* v. *Registrador*, 105 D.P.R. 267, 271 (1976), reiterado en *Aguilú* v. *Sociedad de Gananciales*, 106 D.P.R. 652, 654 (1977), reconocimos el nuevo estado de legislación procesal y sustantiva plasmado en la Ley Núm. 100 de 30 de junio de 1975 y la Ley Núm. 51 de 21 de mayo de 1976, "que erige la mujer a una posición de igualdad respecto al gobierno y disposición de los bienes gananciales". Por la Ley Núm. 51, *supra*, enmendatoria entre otras del Art. 91 del Código Civil, la Asamblea Legislativa sometió la Sociedad Legal de Gananciales a un régimen de coadministración, mediante la cual

los dos cónyuges conjuntamente administran los bienes pertenecientes a esa entidad. El Art. 91 *reformado* establece:

> *Ambos cónyuges serán los administradores de los bienes de la sociedad conyugal,* salvo estipulación en contrario, en cuyo caso uno de los cónyuges otorgará mandato para que el otro actúe como administrador de la sociedad.
>
> Las compras que con dichos bienes haga cualquiera de los cónyuges *serán válidas cuando se refieran a cosas destinadas al uso de la familia o personales* de acuerdo con la posición social y económica de ésta. Disponiéndose que cualquiera de los cónyuges podrá efectuar dichas compras en efectivo o a crédito.
>
> Los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento escrito de ambos cónyuges. Nada de lo antes dispuesto se interpretará a los efectos de limitar la libertad de los futuros cónyuges de otorgar capitulaciones matrimoniales. 31 L.P.R.A. sec. 284. (Bastardillas nuestras.)

Advertimos, pues, la regla general preceptiva de que los cónyuges como co-administradores tienen *de jure* el mandato para realizar ciertas compras con los bienes del consorcio ganancial. Sin embargo el Art. 1313, también así modificado, regula y cualifica el ámbito y libertad de acción en torno a la disposición de los bienes gananciales. A tales efectos en lo pertinente reza:

> No obstante lo dispuesto en la sec. 284 [Art. 91] de este título, ninguno de los dos podrá donar, enajenar, *ni obligar a título oneroso,* los bienes *muebles* e inmuebles de la sociedad de gananciales, *sin el consentimiento escrito del otro cónyuge,* excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges. 31 L.P.R.A. sec. 3672. (Énfasis suplido.)

Con carácter de fórmula legal novedosa se tutela el derecho de la mujer respecto a los bienes muebles. Así, dicho artículo requiere el consentimiento *escrito* de ambos cónyuges para donar, enajenar y obligar a título oneroso los bienes *muebles* de la sociedad ganancial. Como excepción a la regla antes enunciada, no se necesita dicho consenti-

miento cuando se trate de bienes *muebles* destinados al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges. Bajo la legislación anterior a la Ley Núm. 51, el marido, como administrador, ejercía casi absoluta e irrestricta potestad sobre los bienes muebles de la sociedad legal de gananciales.(²) *Aguilú* v. *Sociedad de Gananciales,* supra. Esta situación ha cambiado.

De su texto podemos percatarnos de que, distinto al tratamiento de nulidad que la ley establece en el Art. 91, *supra,* con referencia a transacciones de bienes inmuebles al faltar el consentimiento escrito de ambos cónyuges, respecto a los bienes muebles el Art. 1313 guarda silencio al respecto, aunque preventivamente aclara que "[t]odo acto de disposición o administración que sobre dichos bienes haga cualquiera de los cónyuges *en contravención* a esta sección, y los demás dispuestos en este título, *no perjudicará al otro cónyuge ni a sus herederos".* Anotamos que la versión original del precepto, contenida en el P. de la C. 44, contemplaba "[l]as ventas sin consentimiento serán nulas", lenguaje que fue eliminado en el trámite de su redacción y aprobación final. *Segundo Informe de la Comisión de lo Jurídico Civil,* fechado 6 de mayo de 1975, pág. 2. Ello es fuerte indicador del tratamiento distinto en cuanto a la eficacia del vínculo, que se justifica con miras a ofrecer protección a terceros en relación con la compraventa de bienes muebles. J. Ramos de Sánchez Vilella, *La Mujer y la Nueva Legislación sobre Derechos de Familia (Informe preparado para la Comisión para el Mejoramiento de los Derechos de la Mujer),* 1977, pág. 23.

---

(²) Con anterioridad al 1976, el Art. 91, *supra,* permitía las compras hechas por la mujer con los bienes gananciales, cuando éstas se referían a cosas destinadas al uso de la familia, de acuerdo con la posición social de ésta.

Además, el Código de Comercio tenía otras disposiciones que regulaban dichas compras, cuando la mujer se dedicaba al comercio. 10 L.P.R.A. sec. 1006. En esa perspectiva limitada se produce *Silva* v. *Corte,* 57 D.P.R. 725 (1940), en que el Tribunal apoya esencialmente su decisión.

Al aplicar al caso de autos los principios expuestos concluimos que la salvedad hecha en el Art. 1313, en el sentido de que "no perjudicará al otro cónyuge ni a sus herederos", es indicativa de que presuntivamente la transacción realizada por Espada sin el consentimiento escrito de su esposa Gilda González subsiste. Como veremos, esa falta de consentimiento uxorio por escrito no la anula, aunque acarrea unas consecuencias jurídicas distintas.

## II

*Naturaleza de la Transacción y el Consentimiento*

Tanto la opinión mayoritaria como la parte demandante-recurrente elaboran la teoría de que la naturaleza de la transacción no requería el concurso escrito del cónyuge al amparo del Art. 1313 que *in fine* dispone:

> *El cónyuge que se dedicare al comercio, industria o profesión podrá adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge.* No obstante, será responsable por los daños y perjuicios que pudiere ocasionar por dichos actos a la sociedad legal de gananciales. Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad legal de gananciales. (Bastardillas nuestras.)

El texto transcrito es totalmente nuevo en nuestro ordenamiento. El artículo tiene el propósito "de darle flexibilidad a los cónyuges en la gestión de sus propios negocios", y además:

> . . . que el país continúe sin interrupción sus actos de comercio, que no se paralice la industria. Brindan además, la elasticidad necesaria a el cónyuge que tenga bajo su poder o bajo su control bienes muebles *que tienen que ver directamente* con su oficio, su industria, su negocio, su ocupación, . . .
>
> La disposición va más encaminada a evitar cuestiones de fraude, de mala fe, de engaño, *de intento deliberado de enajenar los bienes del patrimonio conyugal.* O. Cruz Jiménez,

*La Nueva Legislación que rige la Sociedad Legal de Ganan-ciales,* Vol. 37, Núm. 3, Rev. C. Abo. P.R. 76 (1976).

Aunque en su redacción inicial se concibió que la acción en daños pudiera instarse "en cualquier momento antes de la disolución de la sociedad", ello no fue autorizado. *Segundo Informe,* supra, pág. 2.

Los autos ante nuestra consideración demuestran que Espada es un comerciante miembro de una sociedad comercial dedicada a la compra y venta de productos de consumo en un supermercado. Al momento de efectuarse la transacción en controversia era poseedor del cincuenta por ciento (50%) de la participación en la sociedad, convirtiéndose por ésta en dueño del setenta y cinco por ciento (75%). Es difícil sostener que la compra realizada sea una a la cual se dedica corrientemente en su gestión, ya que no trafica en la compra y venta de participaciones en sociedades. Él, al igual que sus socios, es comerciante de productos de consumo y no de participaciones en sociedades.

No estando la transacción aquí envuelta dentro de las permitidas y contempladas, por excepción en el último párrafo del Art. 1313, es ineludible concluir que para efectuarla requería el consentimiento escrito de su esposa Gilda González. Al resolver lo contrario, la opinión mayoritaria invoca como precedente *Silva* v. *Corte,* supra, decisión inaplicable por estar elaborada en un medio ambiente jurídico-conceptual que no reconocía, porque no existía, el régimen de coadministración ganancial vigente que, como regla general, requiere el concurso escrito de los cónyuges para transacciones como la de autos.

La anterior conclusión nos suministra la solución a la tercera interrogante —si debe responder la señora Gilda González en su carácter personal por la obligación— en forma *negativa.* No habiendo prestado su consentimiento escrito a la transacción hecha por su esposo, que era necesario, no puede ser responsable por la misma en su

carácter personal. La ley no permite otra interpretación, y "[m]al se llevaría a cabo la filosofía moderna de igualdad" si resolviéramos lo contrario, *Aguilú*, supra, pág. 656.

Contra las anteriores conclusiones no milita el Art. 93 que reconoce: "Salvo lo dispuesto en el artículo 91, cualquiera de los cónyuges podrá representar legalmente a la sociedad conyugal. Cualquier acto de administración unilateral de uno de los cónyuges obligará a la sociedad legal de gananciales y se presumirá válido a todos los efectos legales." Observamos que la primera oración es cónsona con la derogación de la Regla 15.3 de Procedimiento Civil (1958), en virtud de la Ley Núm. 100, *supra*, que imponía serias restricciones a la capacidad de la mujer casada en el ejercicio de acciones civiles. En cuanto al restante texto, su congruencia con el principio de coadministración adoptado es manifiesta. La regla general que confiere investidura legal a cada consorte, conlleva necesariamente un reconocimiento inicial a los actos unilaterales de cada uno, y, además, establece, sobre la base firme de un nexo lógico, una presunción *juris tantum*, o sea, de carácter rebatible, de legitimidad del acto administrativo individual, pero que no impide, como se ha demostrado en el caso de autos, prueba y adjudicación en contrario.

El acto realizado por Espada no es de administración unilateral que obligue a la sociedad conyugal. Aunque en la Ley Núm. 51 la Asamblea Legislativa no definió lo que debe entenderse por actos de administración, se trata de un término cuyo contenido ha sido definido en nuestra doctrina jurisprudencial. Así en *De la Fuente* v. *A. Roig Sucrs.*, 82 D.P.R. 514, 522–523 (1961), dijimos:

> En la doctrina española es tal vez Puig Brutau quien con mano más certera traza el diseño jurídico de estos actos: "En términos generales cabe afirmar que los *actos de administración* son aquellos que se requieren para contrarrestar los efectos de la duración o transcurso del tiempo en el valor de

las cosas; son, como se ha dicho, los que salvan el valor presente de una cosa, sin comprometerla para el futuro. Son, también los que permiten que una cosa se incremente con un valor que las circunstancias permiten aprovechar sin necesidad de exponerse a un riesgo o de sufrir un quebranto. En todo caso, estimamos que la calificación de un acto de administración ha de tener lugar en atención a sus consecuencias para los condóminos y no a base de apreciar las cualidades que abstractamente le atribuya la jurisprudencia de conceptos", 3 Fundamentos de Derecho Civil, pág. 268 (1953). Y Castán propiamente explica que las dos características más importantes de tales actos son: (1) las de referirse meramente al aprovechamiento o conservación de la cosa o al empleo de las rentas; y (2) ser de resultados transitorios. Se apoya en Planiol para concluir que esos actos "tienen como carácter propio no comprometer el porvenir sino por un tiempo corto, y ser por consiguiente, frecuentemente renovables". 2 Derecho Civil Español, Común y Foral (1957), pág. 351.

Ciertamente no podemos afirmar, independientemente de su naturaleza ya explicada, que la transacción y obligación incurrida por Espada sea una que se realizó para contrarrestar los efectos de la duración o transcurso del tiempo en el valor de su participación en la sociedad comercial. Además, dicha transacción no contemplaba unos resultados transitorios, pero sí comprometía bienes futuros y exponía a las partes al riesgo de sufrir quebrantos.

## III

*Responsabilidad de la Sociedad Legal de Gananciales*

Los pronunciamientos que anteceden permiten examinar si la sociedad legal de gananciales debe satisfacer la deuda incurrida. El marco conceptual vigente sobre los rasgos peculiares de la sociedad fue expuesto en *Torres* v. *A.F.F.*, 96 D.P.R. 648, 652–653 (1968) así:

Nadie niega que la sociedad conyugal tenga personalidad jurídica, ya que posee los requisitos necesarios para tener

propia personalidad: existencia de un interés común, conciencia del mismo y organización de la colectividad. Pero es una entidad económica familiar *sui generis*, de características especiales, *que no tiene el mismo grado de personalidad jurídica de las sociedades ordinarias o entidades corporativas*, sino, como dice Alfonso de Cossio y Corral, en su obra *La Sociedad de Gananciales*, Madrid, 1963, pág. 23, citando a Carbonier, "otro menor adaptado a su razón de ser y a la interpretación entre los patrimonios personales y el social que hay en ella; una personalidad atenuada...."

Es una sociedad legal y necesaria, contraída con el fin de mantener y ayudar a sufrir las cargas del matrimonio, no formada con una idea de especulación, sino fortalecida por el cariño de los cónyuges y que une a éstos para cumplir mejor las cargas y atenciones de su estado con las ganancias obtenidas constante matrimonio.

En armonía con los intereses y valores comunitarios, la versión anterior al año 1976 del Art. 1308 del Código Civil, en su inciso primero, establecía que serán de cargo de la sociedad de gananciales "[t]odas las deudas y obligaciones contraídas durante el matrimonio por el marido, y también las que contrajere la mujer en los casos en que pueda legalmente obligar a la sociedad". (3)

Al aprobarse la Ley Núm. 51, *supra*, se introdujeron varias enmiendas a este articulado. El inciso primero que nos interesa quedó redactado:

Serán de cargo de la sociedad de gananciales: 1. Todas la deudas y obligaciones contraídas durante el matrimonio *por cualquiera de los cónyuges*. (Bastardillas nuestras.)

A los fines de poder precisar el significado actual del texto modificado, resulta orientador examinar detenidamente la interpretación del precepto original en la jurisdicción española, similar al nuestro antes de la enmienda de 1976. En esta tarea es menester tener presente la diferen-

(3) Concordante con el Art. 1408 del Código Civil Español que procedía del Art. 1.394 de la Ley Núm. 207 de las del Estilo y la 60 de Toro (9a., título IV, libro X, de la Novísima Recopilación). Manresa, *Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1969, T. 9, pág. 733.

cia básica subsistente entre ambas jurisdicciones, a saber, que allá el marido todavía es el administrador de la sociedad legal de gananciales, mientras que en Puerto Rico, a partir de 1976, ambos cónyuges son sus administradores:

Manresa nos dice:

Todas las deudas y obligaciones contraídas durante el matrimonio por el marido, representante legal de la sociedad en la situación normal de la misma, se entienden contraídas por la sociedad. *La ley presume que se contraen en interés común. No obstante esta presunción puede destruirse mediante la prueba en contrario* . . . . Manresa, *op. cit.*, pág. 740. (Bastardillas nuestras.)

Puig Peña afirma:

A pesar de la dicción de este precepto, relativo a todas las deudas contraídas durante el matrimonio, y aun a la del art. 1.411, que establece que la sociedad soporta "lo perdido y pagado por alguno de los cónyuges en cualquier clase de juego y lo perdido y no pagado por alguno de ellos en juego lícito", su alcance no es tan general y la doctrina lo limita a las deudas contraídas *en interés de la familia y, por ende, las deudas adquiridas en propio beneficio del marido o en fraude de la mujer,* —como ya reconocieron las antiguas sentencias de 30 de abril de 1888 y 9 de junio de 1893— *deben quedar terminantemente excluidas* y ello aun cuando la ley establece la presunción *iuris tantum* de que las deudas han sido contraídas en beneficio común (11 de julio de 1881); pero en los casos de fraude (8 de mayo de 1900) o de beneficio exclusivo del marido (7 de abril de 1910), la Jurisprudencia rechaza la obligación a las mismas por parte de la sociedad de gananciales. F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Ediciones Pirámide, 1976, T. V, pág. 163. (Bastardillas nuestras.)

Puig Brutau, por su parte nos dice que:

No basta, pues, que el acreedor pueda dirigirse contra los bienes gananciales en virtud de lo que resulta del núm. 1 del art. 1.408, para que la deuda se tenga que considerar *definitivamente de cargo de esta sociedad;* sólo sucederá así

cuando además se trate de obligaciones comprendidas en los últimos cuatro números del art. 1.408, o de multas y condenas pecuniarias que en definitiva resulten a cargo del consorcio. *Todas las demás, pagadas con cargo a los gananciales, dan lugar a reembolso. Es decir, que el pago lo habrá sido de una deuda ajena y dará origen a un crédito ganancial dirigido contra el patrimonio privativo que corresponda.* José Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1967, T. IV, Vol. 1, pág. 693. (Bastardillas nuestras.)

Alfonso de Cossio dice que la masa de bienes gananciales constituye el elemento activo de la sociedad y se halla afecta a diversas cargas y obligaciones propias de la sociedad conyugal. "La sociedad sólo en casos excepcionalísimos y justificados, responde de las obligaciones particulares o privativas de los cónyuges: si las paga o cumple voluntariamente, se le deberá indemnización por ello, si no quiere pagarlas, la ley no le impone, por regla general, tal obligación. Así como existe un capital privativo de cada cónyuge y otro capital perteneciente a la sociedad de gananciales, existen también tres pasivos distintos: el del marido, el de la mujer y el de la sociedad." Citado por Puig Brutau, *op. cit.*, págs. 690-691.

Según Castán, constituyendo los gananciales "la masa o elemento patrimonial común, es lógico que se consideren como cargas de los mismos todas las atenciones y obligaciones de la familia que, por su origen, carácter y fines no debieran ser imputados a la propiedad o a la responsabilidad personal de uno u otro cónyuge". *Id.*, pág. 690.

## Lacruz Berdejo y Sancho Rebullida sostienen:

Este precepto [Art. 1408] sienta en su apartado primero un principio destinado a dotar al marido de la máxima solvencia en el tráfico, al ser él quien administra la comunidad y quien, en la mayoría de los casos, recaba los medios principales (o únicos) para la vida de los suyos. Los acreedores pueden contar, cuando contratan con él, con la responsabilidad de los bienes consorciales (ahora con ciertas limitaciones: cfr. artículos 144 Rh y 1413 Cc.), si llega el caso de hacer efectivo judicialmente el crédito.

*Esto no quiere decir que, en definitiva, todas las deudas del marido sean carga de la comunidad. En el art. 1408 se*

*entremezclan cuestiones de responsabilidad provisional y definitiva.* El apartado 1° establece *una norma general de responsabilidad erga omnes de todos los bienes comunes por deudas del marido, pero nada dice de la responsabilidad inter partes.* De esto se ocupan los restantes apartados, que, de lo contrario, serían redundantes, pues las reparaciones menores o de mera conservación en los bienes peculiares del marido o las reparaciones mayores o menores en los bienes gananciales, o los gastos de sostenimento de la familia y educación de los hijos, etc., las más veces son deudas del marido y, por tanto, ya incluidas en el apartado 1°. Y como debemos pensar —nisi contrarium probetur— que el legislador no promulga preceptos inútiles o repetidos, hemos de concluir, con todas las probabilidades de acierto, que en estos otros apartados se resuelve la cuestión de la responsabilidad definitiva, enumerándose aquellos gastos que, incluso *inter partes*, son también deudas de la comunidad.

. . . . . . . .

Más ampliamente cree la doctrina, a partir de Isábal, que cuando se demuestra que la deuda no la contrajo el marido en beneficio de la familia, sino en el suyo propio, no puede hacerse efectiva sobre los bienes comunes. Esta opinión, que parece hacer suya la S. de junio 1963 (pero en el supuesto se discute sólo la relación *inter partes*), restringe acaso con exceso los derechos de los acreedores, a cuyo beneficio se ordena el art. 1408-1.°. *El texto legal es claro, y no permite distinguir frente a terceros entre deudas contraídas en servicio del consorcio y las puramente personales; de todas responde la masa común.* Para exonerarla son precisos el fraude o *la contravención del Código* (cfr. art. 1413-3.°). El fraude exige la connivencia del acreedor con el cónyuge deudor, o, al menos, que el acreedor actúe con conciencia de la posibilidad de perjuicio para el consorcio, revelada por la naturaleza de acto; en cuanto a la contravención del Código, su principal supuesto será el de los actos gratuitos (entre ellos, asunción gratuita de deuda, promesa de donación, etc.) José L. Lacruz Berdejo, Francisco de Asís Sancho Rebullida, *Derecho de Familia*, 3ra ed., Barcelona, Ed. Bosch, 1978, págs. 238–239.

De estos comentarios podemos sacar en claro que la mayoría de los tratadistas, y las sentencias del Tribunal

Supremo Español consideran —a base del Art. 1408 español, equivalente al 1308 en Puerto Rico *antes* de 1976— que la masa de bienes gananciales responde de todas las deudas contraídas por el marido sólo cuando éstas se incurran en interés de la familia. Puig Peña, siguiendo las sentencias españolas, es del criterio que las deudas adquiridas en beneficio propio del marido y las incurridas en fraude de la mujer deben quedar "terminantemente excluídas". Por otra parte, Lacruz Berdejo y Sancho Rebullida opinan que el artículo está exento de toda obscuridad, ya que dice "todas las deudas y obligaciones" y que esto no permite distinguir frente a terceros entre deudas contraídas en servicio de la sociedad y las puramente personales, y que, por tanto, de todas responde la masa común.

Independientemente de las variantes y tonalidades que de sus respectivos enfoques puedan resultar, podemos afirmar que dichos autores y sentencias coinciden en el pensamiento común de que para exonerar a la sociedad legal de gananciales —y la obligación impuesta por el Art. 1408 español al incurrir el marido en una deuda— es menester demostrar que la obligación se contrajo mediante fraude contra la mujer *o que contraviene el Código*. Compartimos esa interpretación, reforzada por el propio lenguaje del Art. 1313 de nuestro Código Civil (Art. 1413 del Código Civil Español), que antes del 1976 disponía: "[t]oda enajenación o convenio que sobre dichos bienes haga el marido *en contravención a esta sección, y las demás dispuestas en este título o en fraude de la mujer, será nulo y no perjudicará a ésta ni a sus herederos*". 31 L.P.R.A. sec. 3672. (Bastardillas nuestras.)

Aunque al efectuarse la enmienda del artículo 1313 en el 1976, se eliminó como causa de nulidad los actos realizados "en fraude de la mujer", se mantuvo inalterado el concepto "contravenir el Código". A tal efecto, el artículo en su segundo párrafo reza que: "[t]odo acto de

disposición o administración que sobre dichos bienes haga cualquiera de los cónyuges en *contravención a esta sección, y los demás dispuestos en este título, no perjudicará al otro cónyuge ni a sus herederos"*. (Bastardillas nuestras.)

Si hemos de darle plena vigencia al espíritu que animó la reforma acaecida bajo el nuevo estado de derecho imperante en Puerto Rico, a partir de la Ley Núm. 51, tenemos que resolver que la transacción aquí efectuada por Espada fue hecha en contravención al Código, por faltar el consentimiento por escrito de su cónyuge, siendo éste necesario. Como corolario de esta anterior determinación, la obligación así incurrida, objeto de este litigio, no cae en el ámbito contemplado en el inciso uno del Art. 1308 del Código Civil y, por ende, no está a cargo de ni es responsabilidad de la sociedad conyugal. Aparte del reconocido fin de enaltecer la personalidad de la mujer como partícipe a plenitud en las decisiones que afectan la sociedad de gananciales, adviértase que la prohibición de enajenar o gravar tanto los bienes inmuebles como muebles de la sociedad, sin mediar el consentimiento escrito de ambos cónyuges, tiene el propósito adicional de impedir, cuando de compras se trate, que uno de ellos distraiga una parte sustancial del acervo común en un mal negocio, con condiciones onerosas que comprometan la estabilidad económica de la sociedad ganancial, y ello acelere una liquidación prematura.

## IV

Réstanos decidir si es de aplicación el Art. 1310 del Código Civil, que lee:

> El pago de deudas contraídas por el marido o la mujer antes del matrimonio no estará a cargo de la sociedad de gananciales.
>
> Tampoco lo estará el de las multas y *condenas pecuniarias* que se les impusieren.
>
> Sin embargo, el pago de las deudas contraídas por el

marido o la mujer con anterioridad al matrimonio, y el de las multas y condenas que se le impongan, *podrá repetirse contra los gananciales después de cubiertas las atenciones que enumera la sec. 3661* [Art. 1308 del Código Civil] si el cónyuge deudor no tuviese capital propio o fuera insuficiente; pero al tiempo de liquidarse la sociedad se le cargará lo satisfecho por los conceptos expresados. 31 L.P.R.A. sec. 3663. (Bastardillas nuestras.)

Este artículo establece el principio general de que no están a cargo de la sociedad las deudas contraídas por el marido o la mujer con anterioridad al matrimonio, ni las multas y condenas pecuniarias que se les impusieren. De fácil captación resulta su razón de ser. Resultando deudas completamente ajenas a la vida normal de la sociedad conyugal, el Legislador previsoramente las excluye, pues, de lo contrario, la génesis y desarrollo estable de la empresa podría afectarse sustantivamente. Por excepción, permite que pueda exigirse el pago de las indicadas deudas, con cargo provisional a bienes gananciales, si concurren tres condiciones; (a) que estén cubiertas las atenciones enumeradas en el Art. 1308 (31 L.P.R.A. sec. 3661), esto es, que propiamente correspondan a los fines de la sociedad legal; (b) que el cónyuge deudor no tenga capital propio o sea insuficiente; y (c) que al tiempo de liquidarse la sociedad se le cargue al cónyuge deudor lo satisfecho por esas obligaciones anteriores al matrimonio o por esas multas o condenas pecuniarias.

Manresa nos brinda la siguiente justificación del precepto:

La sociedad no es la obligada al pago, pero median intereses legítimos, hay acreedores que no deben perder sus créditos, hay que reparar un mal o un daño, o indemnizar un perjuicio, y la ley, ante la carencia de bienes privativos del cónyuge deudor o responsable, y la existencia de gananciales sobrantes, ordena el pago, la reparación o la indemnización que procedan a costa de la sociedad, pero disponiendo que en su día se le descuente a ese cónyuge en su respectivo haber.

No obstante, dicho autor expone la siguiente preocupación:

> El legislador ha olvidado, sin embargo, un detalle que puede convertir su precepto en inocente e injusto. Al permitir que en cualquier tiempo, durante el matrimonio, pueda exigirse el pago a la sociedad de gananciales, mediante el cumplimiento de las condiciones que se determinan, olvida que, sea el que fuere el sobrante que en ese tiempo pueda haber, tal vez haya sólo pérdidas en el momento de la liquidación, y entonces resultará de hecho que el cónyuge inocente o no deudor habrá sido, en definitiva, el único responsable y perjudicado, sin esperanza alguna de indemnización. Manresa, op. cit., págs. 769-770.

El conflicto de intereses que nos señala Manresa ha movido a otros estudiosos a explorar soluciones más equitativas, entre las que se destaca aquella que propone no estimar ni entender, como obligación susceptible, que un acreedor pueda repetir contra la sociedad de gananciales, deudas como las del presente caso, salvo cuando se determinare que éste obró de buena fe o por error al contratar con uno de los consortes. El mejor exponente de esta posición es el jurista Reyes Monterreal, quien la esboza así:

> En cambio, no compartimos, sin reservas, la opinión extensiva de Santamaría Ansa, para comprender en este precepto a las deudas contraídas por el marido o la mujer durante el matrimonio, que por no haberlo sido dentro del ámbito de sus respectivas facultades para obligar la sociedad de gananciales, hayan de reputarse deudas personales suyas, porque entendemos que la única razón estará en la buena fe del acreedor que contrató de tal modo con el cónyuge, de suerte que cuando éste, debiendo conocer la falta de legitimación del cónyuge contratante para gestionar actos de la sociedad, consintió en reconocerle personalidad para ello, debe sufrir las consecuencias de su confianza. Sólo cuando obrase de buena fe o por error, podrá, en aras del principio que veda el enriquecimiento injusto o el perjuicio del tercero, ampararse en este artículo, y ello con muy enérgicos condicionamientos, porque siempre hay que pensar

en esa idea que recalcamos de pagar y, posteriormente, reajustar internamente el patrimonio de los cónyuges, a fin de que, como advierte González Enriquez, se adapte la responsabilidad externa producida, a la interna querida en definitiva por la Ley. J. M. Reyes Monterreal, *El Régimen Legal de Gananciales*, Madrid, Ed. Graficas Menor, 1962, pág. 251.

Aunque coincidimos con estas reflexiones, ello no ha sido obstáculo para que este Tribunal se haya pronunciado en anteriores ocasiones y con referencia al derecho de excusión de un acreedor, en situaciones que versan sobre la responsabilidad civil extracontractual: *Lugo Montalvo* v. *González Mañón*, 104 D.P.R. 372, 374 (1975); y obligaciones dimanantes de la comisión de delitos públicos: *Sepúlveda* v. *Maldonado Febo*, 108 D.P.R. 530 (1979). Aún así, con referencia a la responsabilidad extracontractual, hemos indicado: "será personal o de la sociedad de gananciales según los hechos que la produjeron. Generalmente se reconoce que si la acción o gestión del marido aprovecha económicamente la masa ganancial, la responsabilidad también será de cargo de dichos bienes". *Lugo Montalvo*, pág. 378.

La variante en el caso que nos ocupa, de que se trata de una obligación contractual, hace inoperante el concepto de "beneficio económico". Incuestionablemente, la obligación no es un pasivo ganancial susceptible de ser cobrado directamente contra la entidad conyugal. Repetimos, es una obligación personal de Espada.

Ahora bien, la falta de causa de acción directa contra la sociedad conyugal Espada-González no inmuniza totalmente a esa entidad de un trámite subsidiario y de unas posibles resultancias en ejecución de sentencia.

Lacruz y Sancho Rebullida nos dicen que:

El régimen del art. 1410 debe aplicarse, *sin distinción, a cualesquiera deudas distintas de las señaladas en el art. 1408* [1310 P.R.]. En efecto, si las deudas ordinariamente

más ajenas a la comunidad, y aun por lo común contrarias a sus intereses, como las antematrimoniales y las delictuales, pueden, subsidiariamente, hacerse efectivas sobre los bienes comunes, ¿qué otras deudas podemos excluir? Por tanto, también las obligaciones válidas de la mujer pueden hacerse efectivas (subsidiariamente, como las del marido) sobre los bienes gananciales, quedando reforzado así el crédito que ésta pueda precisar, por ejemplo, en la administración de los bienes parafernales.

Ciertamente la doctrina se muestra toda ella contraria a la extensión analógica del art. 1410, pero sin razonar suficientemente la supuesta excepcionalidad del precepto, que presenta notables inconvenientes. *En verdad, la ratio legis del art. 1410 comprende a cualesquiera deudas privativas; el precepto trata de satisfacer a los acreedores privativos —a los del marido y a los de la mujer— que, al no poder embargar la cuota del cónyuge deudor en los bienes comunes hasta la disolución del consorcio, quedarían todo ese tiempo sin cobrar sus créditos si éste carece de bienes propios, y a pesar de que puede tener una importísima cuota en los gananciales, acaso formada con las ganancias provenientes de su profesión o actividad.* (Énfasis suplido.) Lacruz Berdejo, *op. cit.*, págs. 240–241.

La semejanza que señala Lacruz y Sancho Rebullida es de aplicación en Puerto Rico. Si en nuestro país una persona convicta de asesinato es demandada por los herederos de la víctima, y se dicta sentencia en su contra, al no tener bienes propios, los acreedores pueden intentar cobrar esa sentencia o condena pecuniaria, previa excusión, de los bienes gananciales: ¿cómo es posible entonces que si esa misma persona incurre en una obligación contractual sin la aquiescencia de su esposa, y no tiene bienes para satisfacerla, no pueda irse por la vía de excusión a obtener su pago sobre los bienes de la sociedad?

No podemos mantener la anterior paradoja. Su solución nos obliga a rechazar un enfoque restrictivo y a dar una interpretación amplia, concluyendo que las "condenas pecuniarias" que menciona el referido Art. 1310, incluyen las sentencias que se dicten contra uno de los cónyuges,

cuando se originan, reclaman y adjudican obligaciones contractuales personales. Reyes Monterreal, *op. cit.*, págs. 250–251; E. Vaz Ferreira, *Tratado de la Sociedad Conyugal*, 2da ed., Montevideo, Ed. Martín Bianchi Altuna, 1963, T. I, pág. 449. No hemos encontrado fundamentos lógicos y jurídicos atendibles para establecer una separación diametral respecto a condenas pecuniarias, deudas prematrimoniales y obligaciones contractuales incurridas por uno de los cónyuges en su carácter individual. En ausencia de un mandato legislativo claro, debemos dar a dichas situaciones igual trato, y así armonizar e integrar las nuevas disposiciones de ley al esquema económico matrimonial.

V

Recapitulando, disentimos porque estimamos que la transacción y obligación reclamada no es una a cargo de la sociedad conyugal Espada-González. Su validez y exigencia es contra Rafael Espada en su carácter personal. Fue correcto el fallo del ilustrado foro de instancia desestimando sumariamente la acción contra esa sociedad conyugal y Gilda González, predicada en una responsabilidad *solidaria y principal*. Respecto a la posible responsabilidad *subsidiaria* de la sociedad Espada-González, nuestro disenso proponiendo la confirmación del dictamen no obstaría para que Gilda González, haciendo uso de sus derechos, continuara en el litigio durante el trámite de ejecución de sentencia representándose a sí misma y a la sociedad conyugal, de modo tal que dicho foro, en su oportunidad, depurara los hechos relevantes al señalamiento IV de esta opinión. En el curso de ese proceso, el tribunal formularía las determinaciones fácticas y conclusiones de derecho sobre si Espada posee bienes propios con los cuales pueda satisfacer una sentencia en su contra. De no existir dichos bienes o ser los existentes insuficientes, el tribunal determinaría, conforme las normas jurídicas aplicables, si la

sociedad conyugal viene obligada a satisfacerla en forma subsidiaria por concurrir rigurosamente las circunstancias previstas en los Arts. 1308 y 1310 del Código Civil. Bajo este segundo supuesto, deberían adoptarse las medidas necesarias para que en su día, al liquidarse esa sociedad por cualesquiera razones, pueda imputársele al cónyuge responsable de la deuda lo satisfecho interinamente por la entidad matrimonial.

Dictaríamos sentencia confirmando la del Tribunal Superior, Sala de Bayamón, fechada 15 de septiembre de 1980, y devolveríamos el caso a dicho foro para la continuación de procedimientos conforme a lo expuesto.