VÍCTOR URBINO h/n/c U RACING STABLE, demandante y recurrido, *v.* SAN JUAN RACING ASSOCIATION; INC. y AMERICAN INTERNATIONAL INSURANCE COMPANY OF PUERTO RICO, INC., demandados y recurrentes.

Número: RE-93-397          Resuelto: 28 de junio de 1996

*Keith A. Graffam* y *Alfredo Ocasio Pérez*, de *Cordero, Miranda y Pinto*, abogados de la parte recurrente; *Rafael Cuevas Kuinlam* y *Antonio Cuevas Delgado*, de *Cuevas Kuinlam & Bermúdez*, abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

El 2 de noviembre de 1988, ante el Tribunal Superior, Sala de Carolina, Víctor Urbino h/n/c *U Racing Stable*, presentó una demanda contra la San Juan Racing Association, Inc. (en adelante San Juan Racing). *Reclamó para sí* una indemnización por daños debido al lucro cesante que resultó de un accidente acaecido a la yegua *Dindi U* el 6 de enero de ese año durante su entrenamiento rutinario. *No hizo alegación alguna de que estuviera casado ni mención específica de que compareciera en nombre de su esposa, la Sra. Esther Bidot Almodóvar. Tampoco mencionó a la sociedad legal de gananciales Urbino-Bidot.* El 18 de julio de 1989 enmendó la demanda para incluir como demandada a la American International Insurance Company of P.R. (en adelante American). San Juan Racing y American negaron responsabilidad.

Una contestación a un primer pliego de interrogatorios, que fue suministrada por Urbino el 27 de mayo de 1989,

reveló que estaba casado.(¹) Ante esos hechos, el 1ro de agosto de 1990 San Juan Racing y American presentaron una moción de sentencia sumaria desestimatoria a base de que la yegua accidentada era un *bien ganancial* y, por ende, la causa de acción correspondía *sólo* a la sociedad legal de gananciales Urbino-Bidot, *parte indispensable.* Invocaron lo resuelto en *Franco v. Mayagüez Building, Inc.,* 108 D.P.R. 192 (1978). La ilustrada Sala de Instancia (Hon. Bárbara M. Sanfiorenzo, Juez) denegó la moción.

Oportunamente, mediante una sentencia parcial emitida el 6 de junio de 1991, se dictaminó que San Juan Racing fue *negligente* al faltar a su deber de proveer el mantenimiento adecuado a la pista del hipódromo El Nuevo Comandante. Posteriormente, luego de una vista sobre daños, emitió una sentencia final el 25 de junio de 1993 que los condenó a satisfacer la suma de cuatrocientos sesenta mil dólares ($460,000) en concepto del valor de la yegua, dos mil ciento noventa y ocho dólares ($2,198) por los gastos médicos y quinientos dólares ($500) de honorarios, más las costas.

A solicitud de San Juan Racing y American revisamos. En su recurso, ambas han vuelto a reproducir el señalamiento de que la sociedad legal de gananciales Urbino-Bidot *era parte indispensable.* Además, como errores, aducen que San Juan Racing no tenía la autoridad para suspender o detener los "traqueos" matinales; que el ilustrado foro de instancia incidió al apreciar la prueba sobre el mantenimiento de la pista; que debió aplicar las doctrinas de asunción de riesgo, negligencia comparada y mitigación de daños, y, finalmente, que al valorar los daños utilizó una prueba especulativa sin aplicarle unas deducciones.

---

(¹) Contrajo nupcias con la Sra. Esther Bidot Almodóvar el 27 de abril de 1963. Han procreado dos (2) hijos varones, Víctor R. Urbino Bidot y Melvin R. Urbino Bidot, y una (1) hija, Jeannette M. Urbino Bidot.

## II

Examinemos, en primer lugar, el señalamiento sobre *parte indispensable.* Se fundamenta en la tesis de que el señor Urbino carecía de capacidad para instar la acción. Argumentan que la reclamación y compensación (lucro cesante) *pertenecían a la sociedad de gananciales Urbino-Bidot,* entidad separada y distinta de los cónyuges.

■ *No tienen razón.* El planteamiento ignora el verdadero alcance de la Ley Núm. 51 de 21 de mayo de 1976, enmendatoria de los Arts. 91 y 93 del Código Civil, 31 L.P.R.A. secs. 284 y 286. Ésta dispuso que, salvo una estipulación en contrario, "[a]mbos cónyuges serán los administradores de los bienes de la sociedad conyugal". 31 L.P.R.A. sec. 284. Por su parte, la enmienda al citado Art. 93 expresamente estableció, como regla general,(²) que *"cualquiera* de los cónyuges *podrá representar legalmente* a la sociedad conyugal. Cualquier acto de administración unilateral de uno de los cónyuges obligará a la sociedad legal de gananciales y *se presumirá válido a todos los efectos legales".* (Énfasis suplido.) 31 L.P.R.A. sec. 286.

■ Con estas enmiendas, la Asamblea Legislativa equiparó la facultad de ambos cónyuges para administrar la sociedad legal de gananciales e incorporó el principio de coadministración y representación legal. *Aguilú v. Sociedad de Gananciales,* 106 D.P.R. 652 (1977). *Desde entonces, individualmente, tanto el esposo como la esposa tienen capacidad de jure para representar a la sociedad de gananciales en los tribunales.*(³)

---

(²) Como excepciones, según el Art. 91 del Código Civil, 31 L.P.R.A. sec. 284, son "capitulaciones, compras de ambigua latitud, y enajenación de inmuebles". *Alicea Álvarez v. Valle Bello, Inc.,* 111 D.P.R. 847, 850 esc. 4 (1982).

(³) En *Padró Collado v. Espada,* 111 D.P.R. 56 (1981), al palio del último párrafo del Art. 1313 del Código Civil, 31 L.P.R.A. sec. 3672, que establece que "[e]l cónyuge que se dedicare al comercio, industria, o profesión podrá adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge", reconocimos la facultad de un cónyuge que se dedica al comercio para

■ Ciertamente, la mejor práctica en acciones en las que se reclaman y protegen los intereses gananciales es incluir a ambos cónyuges y mencionar (hacer parte) a la sociedad de gananciales. Sin embargo, *al filo del próximo siglo, la igualdad jurídica entre los cónyuges, el principio de coadministración y la capacidad legal representativa* —según las enmiendas de 1976— requieren reconocer a plenitud que un cónyuge tiene la capacidad legal necesaria para reclamar los daños gananciales sin tener que incluir o mencionar en la demanda la sociedad de gananciales y al otro cónyuge.

■ Es hora de despojarnos de los atavismos y formalismos de antaño. Hemos de superar los tecnicismos y las omisiones gramaticales. Por ello, reconocemos la *investidura legal representativa de cada cónyuge.* Cuando uno de ellos comparece judicialmente y hace un reclamo de naturaleza ganancial (esté así alegado o no), si *posteriormente se prueba*, ha de estimarse la acción en nombre de la sociedad legal de gananciales, sin que la omisión inicial de una alegación al respecto sea defectuosamente fatal.

Esa es la situación de autos. Aunque no se alegó que la reclamación era en nombre de la sociedad ganancial, *desde una etapa temprana del proceso el descubrimiento de prueba reveló a las demandadas, San Juan Racing y American, que el estado civil del señor Urbino era de casado* y que los daños eran gananciales. Pidieron la desestimación mediante una sentencia sumaria. En su apoyo acompañaron, *como prueba*, las contestaciones 1(e) y 2 del primer pliego de interrogatorios y una copia parcial de la deposición al señor Urbino. Aun así, el ilustrado foro de instancia la denegó. Con motivo de ese planteamiento, la *prueba* sometida *demostró concluyentemente que la acción era para la reclamación de unos daños gananciales.* Así debió concluirlo dicho foro, aun cuando se negó a desestimar suma-

---

obligar los bienes de la sociedad conyugal dedicados a la operación incidental y propiamente inherente del negocio.

riamente. A tono con el mandato de la Regla 36.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, *in fine*, debió especificar "los hechos sobre los cuales no hay controversia sustancial ... [y que en] el juicio, se considerarán probados", a saber, la naturaleza ganancial de la reclamación.

Ante esta realidad fáctica, no podemos ponernos una venda. Lo alegara o no el señor Urbino, la *prueba* reveló el carácter ganancial de su reclamo. Estamos ante la presencia de un acto unilateral de uno de los cónyuges al amparo de su facultad de jure para administrar y representar judicialmente a la sociedad de gananciales.[4]

Distinto de la contención de las demandadas recurrentes, San Juan Racing y American, es *inaplicable* el caso *Franco v. Mayagüez Building, Inc.*, supra. Allí, la obrera sufrió un accidente el 24 de agosto de *1970*, que era compensable a través del Fondo del Seguro del Estado. No fue hasta el 6 de febrero de *1975*, más de cuatro (4) años después, que presentó, junto con su esposo, la acción judicial. Desestimamos la acción por daños del esposo y la sociedad de gananciales, pues la partida de *lucro cesante* corresponde a la sociedad de gananciales y, por ende, el término para reclamar los daños personales del esposo y la sociedad no quedó interrumpido por la reclamación de la esposa ante el Fondo. En consecuencia, la reclamación por lucro cesante estaba prescrita.

No nos pronunciamos, entonces, sobre los extremos ahora analizados, pues al iniciarse esa acción (*1975*) todavía no se había enmendado los artículos del Código Civil relativos al principio de igualdad conyugal, de coadministración, de investidura y de representación legal. El caso de autos nos brinda esa oportunidad.

■ Bajo este prisma doctrinario, concluimos que la

---

[4] En la alternativa, según la norma establecida en *Padró Collado v. Espada*, supra, el señor Urbino, como parte de la operación inherente de su negocio, ejerció la causa de acción que nos ocupa, para la cual no tenía que comparecer a nombre de la sociedad ganancial ni necesitaba el concurso de su esposa.

prueba enmendó y subsanó la omisión *de parte indispensable* y, por ende, no procede la desestimación solicitada.([5])

## III

Por estar relacionados íntimamente con la apreciación de la prueba, examinaremos en conjunto los errores restantes.

Coincidimos con los demandados San Juan Racing y American en que la *Administración del Deporte Hípico*, por ley, reglamenta en su totalidad dicho deporte y es quien únicamente está facultada para intervenir o detener los "traqueos" matinales.([6]) Sin embargo, no varía el deber de San Juan Racing de mantener en "buen estado de funcionamiento" y brindarle mantenimiento a la pista. Por ello, no le releva su negligencia por incumplirlo. Así aclarado,

---

([5]) No es menester aplicar la Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. En recta juridicidad, ese curso de acción implicaría por un tecnicismo ya superado en nuestro Código Civil, *revocar* hoy una sentencia dictada en sus méritos, producto de unos trámites, incidentes y vistas evidenciarias acaecidos durante los últimos ocho (8) años, para *sua sponte* poder ordenar la inclusión de la sociedad legal de gananciales Urbino-Bidot.

Revocar conllevaría devolver los autos originales al tribunal de instancia para que éste continúe (*más bien inicie*) los procedimientos, aun cuando ya se desfiló *totalmente* la prueba de las partes. Ese curso de acción tiene su base en la *tesis errónea* de que en ningún momento estuvo presente la *única* parte *indispensable* con la capacidad en ley para demandar, esto es, la sociedad legal de gananciales Urbino-Bidot, *entidad* diferente y distinta de la de sus miembros.

El principio procesal básico de la citada Regla 15.1 es que no se desestimará un pleito por no tramitarse a nombre de la persona que tenga el derecho en ley a reclamar —aquí la sociedad legal de gananciales Urbino-Bidot— "hasta que, luego de levantarse la objeción, se haya concedido *un tiempo razonable*" para sustituirlo.

Esta regla debe cubrir, de ordinario, la etapa inicial del procedimiento. No como en el caso de autos, *cuando ya han transcurrido varios años* de litigio y se ha ventilado *todo el juicio*; después de dictada la sentencia y agotado ya el trámite apelativo.

([6]) El Reglamento de la Administración del Deporte Hípico de 29 de enero de 1990, en lo pertinente, establece:

"2106. La Empresa Operadora deberá tener una persona a cargo de la pista durante las horas de entrenamiento de escuela, quien organizará y supervisará el uso de la pista conforme al horario aprobado disponiéndose, que podrá ser sancionada la persona que viole las reglas de uso de la pista.

"2108. Será requisito indispensable para la Empresa Operadora:

"17. El equipo y *facilidades* que se mencionan como requisitos mínimos, *se sobreentiende que deberán estar en buen estado de funcionamiento y en su lugar correspondiente para los usos que se destinen.*" (Énfasis suplido.)

era inmaterial determinar si San Juan Racing tenía el control o no para detener los "traqueos" matinales; lo importante era *si tenía el control del mantenimiento de la pista*, pues lo que ocasionó el accidente fue su *mal estado.*

No se cuestiona persuasivamente que el control absoluto sobre el mantenimiento de la pista recaía sobre San Juan Racing. Tampoco nos convence el planteamiento predicado en que el demandante, Urbino, asumió los riesgos y contribuyó con su negligencia al accidente.

■ "La doctrina de asunción de riesgo está enraizada en el pensamiento de Derecho común que refiere el concepto de 'riesgo' a una relación libremente contraída entre el demandante y el demandado, por lo que se 'limita' la responsabilidad de este último hacia el primero. F. James, *Assumption of Risk*, 61 Yale L.J. 141, 142 (1952)." *Soto v. Tropigas de P.R.*, 117 D.P.R. 863, 865 (1986). Tiene dos (2) acepciones: la primaria, en la que existe un deber limitado de cuidado por el demandado, y la secundaria, que propiamente se configura como una manifestación de negligencia comparada. Íd., pág. 866.

El hecho de que Urbino tuviera conocimiento de que unas fuertes lluvias podían afectar la pista y, aún así, decidiera ejercitar la yegua, no releva a San Juan Racing de su deber y obligación *absoluta* de mantener la pista en condiciones óptimas, máxime en nuestro trópico, donde hay tanta incidencia de lluvia. *El usuario —Urbino— tiene el derecho a confiar en que las facilidades sean seguras y que se les preste el mantenimiento adecuado constantemente.*(⁷)

Además, se quejan los demandados, San Juan Racing y American, de que no se aplicara negligencia comparada a Urbino por no brindarle un tratamiento médico adecuado a la yegua luego del accidente. Tampoco tienen razón. Inicialmente, según señalan ellos mismos, Urbino no observó

---

(⁷) *Viñas v. Pueblo Supermarket*, 86 D.P.R. 33 (1962), es inaplicable por razón de sus hechos ser completamente distinguibles.

síntomas adversos en la yegua, aparte de la herida causada por la caída. Posteriormente, la yegua sufrió una infección que la incapacitó como corredora y reproductora. Coincidimos con la conclusión del Tribunal de Instancia de que dicha infección fue provocada por la herida que sufrió la yegua al caerse. Dicho accidente fue la causa eficiente que desató la cadena de eventos que concluyó posteriormente en su incapacidad. El planteamiento sobre la mitigación de daños es improcedente.

En resumen, no erró el tribunal de instancia al apreciar la prueba e imponer responsabilidad.

## IV

Réstanos examinar la valoración de daños. La prueba revela que, a la fecha del accidente, la ejemplar Dindi U había competido en diversas carreras en Puerto Rico y logrado varios premios, ascendentes a cuatrocientos sesenta y un mil cuatrocientos ochenta y dos dólares ($461,482). Específicamente, durante 1986 y 1987[8] Dindi U compitió en treinta y cinco (35) carreras y llegó en las posiciones siguientes: 1er lugar en veintitrés (23) ocasiones; 2do lugar en cinco (5) ocasiones; 3er lugar en cuatro (4) ocasiones; 4to lugar en dos (2) ocasiones. Quedó fuera de las cinco (5) posiciones en una (1) ocasión. Además, fue ganadora de la Triple Corona del Hipismo Puertorriqueño para 1987.[9]

El señor Antonio Mongil, criador de caballos de carrera y agente en la compra y venta de caballos, estimó que en dos (2) o tres (3) años Dindi U podía haber ganado el mismo dinero que antes del accidente. Además, le adjudicó

---

[8] En 1986, a la edad de dos (2) años y habiendo corrido sólo siete (7) meses del año, Dindi U ganó en premios ochenta y cinco mil cuatrocientos dieciocho dólares ($85,418). En 1987 ganó trescientos setenta y seis mil sesenta y cuatro ($376,064). De aquí el total de cuatrocientos sesenta y un mil cuatrocientos ochenta y dos dólares ($461,482).

[9] Por sus actuaciones, se le concedió a Dindi U los Honores de "Potranca del Año" y se le incluyó en el catálogo de ventas de Ocala, Breeders Association, para promover la venta de sus potros de carrera en Estados Unidos.

un valor residual como reproductora entre cuarenta mil dólares ($40,000) y cincuenta mil dólares ($50,000). El tribunal tomó como base para adjudicar el valor de la yegua lo resuelto en *Restrepo v. State*, 550 N.Y.S.2d 536 (1989). Allí, por los daños sufridos a un caballo que competía en carreras y cuya vida como corredor terminó debido a los daños sufridos, se concedió una indemnización a base de las ganancias obtenidas en carreras previas y las posibilidades de que ganase en años subsiguientes. No intervendremos con esa apreciación.

Por los fundamentos antes expuestos, *se dictará sentencia estimatoria de la acción y compensación como perteneciente a la Sociedad Legal de Gananciales Urbino-Bidot. Así modificada, se confirma.*

Los Jueces Asociados Señores Fuster Berlingeri y Corrada Del Río emitieron sendas opiniones disidentes. El Juez Asociado Señor Rebollo López no intervino.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

I

En el caso de autos, la mayoría de este Tribunal resuelve que puede estimarse que una causa de acción se presentó en nombre y para beneficio de una sociedad legal de gananciales, aunque dicha sociedad no haya sido incluida o mencionada de modo alguno en las alegaciones del demandante, si del descubrimiento de prueba que fue realizado por la parte demandada surge que el demandante estaba casado. En otras palabras, la mayoría resuelve por primera vez en este caso que una parte indispensable comparece formalmente en un litigio por su mera mención en

un interrogatorio o una deposición de la parte contraria, aunque el promovente de la acción no la haya incluido en ésta.

Este dictamen contraviene claros principios y normas del ordenamiento procesal civil de Puerto Rico. Además, debilita seriamente el principio bien establecido en nuestro ordenamiento jurídico de que la sociedad legal de gananciales es una entidad con personalidad jurídica propia, separada y distinta de los cónyuges que la integran. *Reyes v. Cantera Ramos, Inc.*, 139 D.P.R. 925 (1996); *Ríos Román v. Registrador*, 130 D.P.R. 817 (1992); *Pauneto v. Núñez*, 115 D.P.R. 591 (1984); *Int'l Charter Mortgage Corp. v. Registrador*, 110 D.P.R. 862 (1981); *Rovira Tomás v. Srio. de Hacienda*, 88 D.P.R. 173 (1963).

La mayoría llega a este inusitado dictamen a pesar de los varios hechos y las circunstancias de este caso que son incongruentes con él. En primer lugar, el demandante aquí nunca pretendió vindicar reclamación ganancial alguna. Por el contrario, la demanda fue presentada por Víctor Urbino, a nombre propio, bajo la creencia de que la causa de acción le correspondía sólo a él y no a la sociedad legal de gananciales integrada por él y su esposa. Un mero examen de los autos obliga a concluir que Urbino no tenía la intención de incluir a la sociedad legal de gananciales en la demanda. Como señala en su alegato ante nos, consideraba que él era la única "parte interesada y con competencia en este caso", debido a que la licencia de dueños de caballos de carreras de la Administración de Deporte Hípico de Puerto Rico fue expedida a favor suyo y no a favor de la sociedad de gananciales.

De igual forma, la mayoría obvia el hecho de que el tribunal de instancia acogió la alegación de Urbino sobre el carácter privativo de su reclamación. Ello es así ya que, además de denegar la moción de sentencia sumaria presentada por la parte codemandada y de no requerir, mediante una simple enmienda a la demanda, la inclusión de

la sociedad en la acción, el foro a quo dictó una sentencia a favor de Urbino sin mencionar la participación de la sociedad en ésta. Tanto Urbino como el foro a quo conocían que la parte codemandada interesaba la desestimación de la demanda porque la sociedad no estaba incluida como parte. Sin embargo, ninguno de ellos realizó o requirió el sencillo trámite de enmendar la demanda a tales efectos. Por ello, contrario a lo indicado en la opinión mayoritaria, la sociedad legal de gananciales integrada por Urbino y su esposa nunca fue incluida como parte en la demanda. Ni Urbino ni el tribunal de instancia entendían que la causa de acción era de carácter ganancial.

Siendo evidente, pues, que el pleito sólo giraba en torno a la reclamación de los daños causados a un bien supuestamente privativo, no puede resolverse, como lo hace la mayoría, que en el caso del epígrafe no era necesaria la inclusión de la sociedad como parte en la demanda. Al decidir de esta manera, la mayoría no sólo contraviene las alegaciones y actuaciones del demandante y del foro a quo antes mencionadas, sino que, además, atenta contra el principio de que la sociedad de gananciales es una entidad separada de los cónyuges que la integran. Presupone que siempre que en un pleito aparezca sólo uno de los cónyuges a nombre propio, ha de estar necesariamente representada la sociedad de gananciales, cosa que desbarata la clásica y bien establecida distinción entre los bienes privativos y los gananciales.

Si bien es cierto que la reforma de 1976 del Código Civil equiparó la facultad de ambos cónyuges para administrar y representar a la sociedad legal de gananciales, no es menos cierto que, aun con posterioridad a dichas enmiendas, la sociedad continúa poseyendo una personalidad sui géneris separada de los cónyuges que la integran. Una cosa es que la sociedad pueda ser *representada* por cualquiera de los cónyuges, y otra muy distinta es que la sociedad haya sido hecha parte propiamente en un pleito. En otras pala-

bras, sea uno o el otro cónyuge el que represente a la sociedad, el asunto litigioso debe pertenecer a la sociedad y ésta debe ser incluida como tal en las alegaciones, para que propiamente exista una acción de la sociedad. La mayoría confunde estas dos (2) cuestiones tan distintas, al no reconocer que procesalmente es necesario que, de las alegaciones sucintas de la demanda, surja que la reclamación se realiza en representación y a nombre de la sociedad o que, en su defecto, se enmiende la demanda a los fines de incluir a la sociedad. Resolver del modo como lo hace la mayoría convierte en letra muerta las disposiciones de la Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que requieren que todo pleito se tramite "a favor de la persona que por ley tenga el derecho que se reclama", y de la Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, que exige la inclusión de partes indispensables.

Distinto al caso del epígrafe resultan ser los hechos de *Reyes v. Cantera Ramos, Inc.*, supra. En aquel caso determinamos que no era necesaria la mención expresa de la sociedad de gananciales en el epígrafe de la demanda habida cuenta que de las alegaciones y de la súplica de ésta podía fácilmente desprenderse que las reclamaciones incoadas se hacían a nombre y en representación de la sociedad. Esa no es la situación en el caso de autos, ya que ni del epígrafe ni de las alegaciones ni de la súplica surge que la reclamación se presentó en representación de la sociedad. Tampoco surge de los autos que, para subsanar tal defecto, la parte demandante o el foro a quo, motu proprio, hayan enmendado la demanda para incluir a la sociedad como parte.

Por otro lado, resulta sorprendente que la mayoría entienda que la omisión de la sociedad como parte en la demanda quedó subsanada posteriormente por la presentación de prueba que demostró la naturaleza ganancial de la reclamación, cuando en realidad *el demandante no presentó en juicio evidencia alguna al respecto*. Sabido es que

a tenor con la Regla 13.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, las alegaciones de una demanda pueden ser enmendadas implícitamente sólo si en el *juicio en su fondo* se presenta, no se objeta y se admite, evidencia sobre las cuestiones no suscitadas en la demanda. El mero descubrimiento de una evidencia, en los procedimientos realizados con antelación al juicio no supone, por sí solo, que la demanda va a quedar automáticamente enmendada ni subsanada a los fines de incluirla. Para que la demanda se entienda como enmendada por dicha prueba es necesario: (1) que la parte que interese la enmienda la presente en el juicio; (2) que no exista objeción a dicha presentación, o (3) que, aun cuando exista objeción, el tribunal la admita. Véase J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1986, Vol. II, pág. 78. Nada de ello ocurrió aquí.

En este caso es fácil constatar, del examen de los autos, que el tribunal de instancia conoció de la existencia de la sociedad legal de gananciales integrada por Urbino y su esposa sólo después de que San Juan Racing anejara a su moción de sentencia sumaria la contestación al primer pliego de interrogatorios y la transcripción de la deposición tomada a Urbino. *Ni la contestación ni la deposición antes mencionada fueron presentadas en el juicio, como evidencia, por el demandante. Tampoco el tribunal evaluó la admisibilidad y pertinencia de éstas.* Además, no encontramos en autos resolución u orden alguna que reflejara la intención del tribunal de instancia de aceptar la naturaleza ganancial de la acción como un hecho material no controvertido o estipulado. Evidentemente, en el caso ante nos, la falta de parte indispensable nunca quedó subsanada debido a que la evidencia obtenida mediante el descubrimiento de prueba nunca fue presentada en juicio. Ni siquiera el conocimiento que de ella obtuviera el foro sentenciador tuvo el efecto de mover a dicho foro a requerir la

inclusión de la sociedad mediante una enmienda a la demanda.

No obstante lo anterior, la mayoría de este Tribunal concluye que, a pesar de que el demandante no presentó en el juicio evidencia alguna que enmendara las alegaciones, el mero hecho de que el demandado anejase a una moción de sentencia sumaria ciertos documentos que prueban que al momento de adquirirse la yegua Urbino estaba casado, es suficiente para entender que está enmendada la demanda y, como consecuencia, que es suficiente para estimar la acción en nombre de la sociedad. Ello es claramente contrario a lo dispuesto en la citada Regla 13.2 de Procedimiento Civil de Puerto Rico.

## II

Por otro lado, aunque aceptásemos la posición asumida por la mayoría en cuanto al asunto antes discutido, me veo obligado también a disentir, ya que resulta errada la decisión de este Tribunal de confirmar la valoración que de los daños hiciera el foro de instancia. De acuerdo con su sentencia, el foro a quo otorgó daños conforme a los premios obtenidos por Dindi U en carreras previas y a sus posibilidades de éxito en carreras futuras.[1] No obstante lo anterior, surge de la prueba presentada que las *ganancias* obtenidas por Urbino sólo comprendían el setenta por ciento de la cantidad recibida como premios. El otro treinta por ciento era utilizado para pagar al jinete, al entrenador, al igual que los arbitrios y las contribuciones correspondientes. No empece a que el propio Urbino declaró con respecto al por ciento que en realidad representaba su ganancia, el tribunal de instancia otorgó una cuantía en daños

---

[1] El tribunal de instancia acogió esta forma de valoración de daños conforme a lo resuelto en *Restrepo v. State*, 550 N.Y.S.2d 536 (1989), y rechazó expresamente el valor otorgádole a la yegua por los testigos de la parte demandante.

conforme a la cantidad bruta recibida en premios. Esto es, dicho foro valoró la yegua en $460,000, a base de que la cantidad *bruta* en dinero recibida como premio durante los dos años anteriores ascendía a $461,482. En ningún momento dicho tribunal dedujo el treinta por ciento no constitutivo de ganancia. A fin de corregir dicho error, este Tribunal debió ajustar la cuantía de daños otorgada hasta reducirla en un treinta por ciento, para un total de $368,000. Ello es así porque lo que se indemniza es los *daños reales* sufridos por la pérdida de la yegua. *Soto Cabral v. E.L.A.*, 138 D.P.R. 298 (1995); H.M. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, pág. 429; R.B. Capalli, *Tort Damages in Puerto Rico*, 46 Rev. Jur. U.P.R. 241, 285 (1977).

Por último, es necesario indicar que en el caso de autos la mayoría de este Tribunal no ha reconocido la negligencia en que incurriera la parte demandante. El demandante Urbino, como dueño y criador de caballos, con experiencia de alrededor de dieciocho años en tales menesteres, al momento en que ocurrió el accidente conocía o debía conocer las malas condiciones en que se encontraba la pista el día en cuestión. Ello es así, más aún, cuando tanto su jinete como su "traqueador" eran conscientes de que a la pista no se le daba mantenimiento antes de los "traqueos" y que, aun después de éstos, el mantenimiento de la pista se limitaba a pasarle un rastrillo para borrar las huellas de los caballos. Como persona con vasta experiencia en el deporte hípico, Urbino conocía o debía conocer las reclamaciones llevadas a cabo, tanto por los jinetes como por la Asociación de Jinetes, en las que reprobaron el pésimo estado en que se encontraba la pista, e incluso amenazaban con no correr durante las carreras del mes de enero. Asimismo, Urbino sabía o debía saber que las fuertes lluvias acaecidas durante el mes de enero empeoraron las condiciones de la pista de tal forma que usarla así constituía un alto riesgo

para su jinete y su caballo. Resulta meridianamente claro que, ante el cuadro de hechos reseñado, Urbino debió anticipar la posibilidad de un accidente como el de este caso. No cabe duda que, para una persona de su experiencia, ello era previsible. En razón de ello, en el caso de autos están claramente presentes los elementos de *negligencia comparada*. Tanto San Juan Racing como Urbino conocían las condiciones de la pista, pero ni San Juan Racing la reparó ni Urbino impidió que su caballo se entrenara en ella. Fue precisamente para atender estos errores sobre la negligencia y los daños que expedimos el recurso, y ahora resulta que la opinión mayoritaria ni siquiera discute cabalmente estos asuntos.

Por entender, pues, que la opinión mayoritaria refleja varios desaciertos, disiento.

— O —

Opinión disidente del Juez Asociado Señor Corrada Del Río.

La opinión mayoritaria de este Tribunal equivocadamente resuelve que una causa de acción instada para sí por el demandante Víctor Urbino, por daños ocasionados al ejemplar de carreras Dindi U, es un acto unilateral de uno de los cónyuges al amparo de su facultad de jure para administrar y representar a la sociedad legal de gananciales, por lo que la prueba alegadamente enmendó y subsanó la omisión de parte indispensable y, por ende, no procede la desestimación solicitada. Descarta así que el señor Urbino no hizo alegación alguna de que estuviera casado ni mencionó en específico que compareciera a nombre de la sociedad legal de gananciales compuesta por éste y su esposa, Sra. Esther Bidot Almodóvar. Descarta, además, que ante el tribunal de instancia se objetó oportunamente por la parte demandada que la reclamación pertenece a la sociedad de gananciales, no habiéndose incluido a ésta como

parte. Asimismo, *tampoco se presentó prueba alguna durante la vista en su fondo* en torno al carácter ganancial de la reclamación. Por entender que en el caso de autos el señor Urbino no tenía la capacidad para instar para sí tal reclamación, puesto que ésta pertenece a la sociedad de gananciales, no habiendo comparecido éste en representación de ella, disentimos de la opinión emitida por este Tribunal. El remedio que procede es revocar las sentencias recurridas y ordenar la inclusión como parte demandante a la sociedad de gananciales compuesta entre Víctor Urbino y Esther Bidot Almodóvar, cuya unión o sustitución, en virtud de lo dispuesto en la Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, se retrotraería a la fecha cuando el demandante Urbino instó la acción en daños y perjuicios. Veamos.

## I

El Sr. Víctor Urbino, haciendo negocios como U Racing Stable, presentó una demanda contra San Juan Racing Association, quien poseía y operaba el hipódromo El Nuevo Comandante para la fecha de los hechos que dan base a la acción. Asimismo, incluyó como demandada a la aseguradora de la San Juan Racing Association, American International Insurance Company of Puerto Rico, Inc. Se alegó en la demanda que la ejemplar Dindi U, cuyo dueño es el demandante, se encontraba en un trabajo matinal (*traqueo*) el 6 de enero de 1988, alrededor de las 7:00 de la mañana, en las facilidades de la pista del hipódromo El Nuevo Comandante, y que cuando se acercaba a la milla y un octavo de la pista la ejemplar cayó en un hoyo de aproximadamente pie y medio de profundidad, cayendo la ejemplar y su jinete al piso; que la ejemplar sufrió lesiones que la han imposibilitado de participar en carreras y se entiende que no podrá volver a participar; que las lesiones la imposibilitan en sus funciones reproductivas; que la

caída se debió a la exclusiva negligencia del demandado al no haber dado mantenimiento a la pista. Se reclamaron daños por los premios dejados de devengar, gastos médicos y de cuidos al ejemplar y la pérdida en el valor de la ejemplar como reproductora, para un total de $1,502,128, más las costas, gastos y la suma de $100,000 para honorarios de abogados.(¹)

El tribunal de instancia señaló una vista en su fondo sobre el aspecto de negligencia para el 7 y 8 de agosto de 1990. Así las cosas, el 2 de agosto de 1990 la parte demandada presentó una moción de desestimación y/o sentencia sumaria, para aducir que la yegua era un bien ganancial, ya que el demandante estaba casado y la había adquirido durante su matrimonio; que la sociedad de gananciales nunca fue incluida en el pleito, y que era ésta quien tenía que reclamar los daños, por lo que la demanda dejaba de exponer una causa de acción que justificara la concesión de un remedio. El estado civil del demandante surgió a través de un interrogatorio que le fuera cursado, así como de la toma de una deposición. La referida moción fue denegada durante la celebración de la vista en su fondo sobre el aspecto de negligencia, sin fundamentar.

Celebrada la referida vista, el tribunal de instancia dictó una sentencia parcial el 6 de junio de 1991, en la cual sostuvo que la parte demandada incurrió en negligencia al no proveer el mantenimiento adecuado y efectivo a la pista a los fines de detectar las áreas defectuosas, y que los daños sufridos por la parte demandante fueron ocasionados por la negligencia de la demandada San Juan Racing Association.

Posteriormente se celebró la vista en su fondo sobre daños los días 29 de mayo, y 1 y 2 de junio de 1992. Finalmente, el 25 de junio de 1993 el tribunal de instancia dictó

---

(¹) No surge de las alegaciones de la demanda que el Sr. Víctor Urbino sea casado ni que haya comparecido a nombre de la sociedad legal de gananciales compuesta entre éste y su esposa Esther Bidot Almodóvar.

la sentencia final, en la cual condenó a la parte demandada a satisfacer a favor de la parte demandante la suma de $460,000 en concepto del valor en el mercado de la ejemplar como corredora antes del accidente; la suma de $2,198 en concepto de gastos médicos en que incurrió el demandante, las costas y gastos del pleito, así como la suma de $500 en concepto de honorarios de abogado.

No conforme, acudió ante nos la parte demandada y solicitó la revocación de ambas sentencias, habiendo este Tribunal expedido el recurso. La parte recurrente formuló varios señalamientos de error, siendo el medular para resolver la controversia ante nos el siguiente:

> [Erró el tribunal de instancia] al no desestimar la demanda por no incluirse como parte indispensable a la esposa del demandante y a la Sociedad Legal de Gananciales cuando la causa de acción del demandante por pérdida de ingresos (lucro cesante) pertenece a ésta última. Petición de revisión, pág. 9.

## II

Es a base de tales hechos que la opinión mayoritaria de este Tribunal resuelve que la causa de acción que nos ocupa, instada para sí por el señor Urbino, es un acto unilateral de uno de los cónyuges al amparo de su facultad de jure para administrar y representar a la sociedad de gananciales, por lo que la prueba alegadamente enmendó y subsanó la omisión de parte indispensable. Por esto es que concluye que no procede la desestimación solicitada. Dicha opinión parte de la premisa equivocada de que la Ley Núm. 51 de 21 de mayo de 1976, enmendatoria de los Art. 91 y 93 del Código Civil, 31 L.P.R.A. secs. 284 y 286, tuvo el efecto de autorizar a un cónyuge a instar una reclamación perteneciente a la sociedad de gananciales *sin incluir a dicha parte en la causa de acción correspondiente.*

Por entender que dicha premisa es equivocada, no podemos suscribir la opinión mayoritaria de este Tribunal. Procede resolver que la reclamación, que es objeto de la de-

manda, le pertenece a la sociedad de gananciales, por lo que el demandante Víctor Urbino carecía de capacidad para instar para sí tal acción. Veamos.

El Art. 1296 del Código Civil, 31 L.P.R.A. sec. 3622, provee que "[l]a sociedad de gananciales empezará precisamente en el día de la celebración del matrimonio". Nótese que en el caso de autos surgió del descubrimiento de prueba que el demandante Víctor Urbino contrajo matrimonio con doña Esther Bidot Almodóvar el 27 de abril de 1963 y que el ejemplar de carreras Dindi U fue comprado por el demandante Víctor Urbino en abril de 1986, esto es, durante su matrimonio.(²) No obstante, la causa de acción fue instada por el señor Urbino en su carácter personal. Es a base de lo anterior que la parte demandada recurrente solicitó la desestimación de la demanda bajo el fundamento de que el demandante Víctor Urbino carecía de capacidad de instar para sí tal acción.

Por otro lado, el Art. 1307 del Código Civil, 31 L.P.R.A. sec. 3647, dispone que "[s]e reputan gananciales todos los bienes del matrimonio, mientras no se pruebe que pertenecen privativamente al marido o a la mujer".

Se definen los bienes propios de cada uno de los cónyuges como aquellos que cada uno aporte al matrimonio como de su pertenencia; los que adquiera durante él, por título lucrativo, sea por donación, legado o herencia; los adquiridos por derecho de retracto o por permuta con otros bienes, pertenecientes a uno solo de los cónyuges, y los comprados con dinero exclusivo de la mujer o del marido. Art. 1299 del Código Civil, 31 L.P.R.A. sec. 3631.

Por su parte, se definen los bienes gananciales como aquellos adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos; los obtenidos por la industria, sueldo o trabajo de los cónyuges

---

(²) Cabe señalar que el demandante no alega en ningún momento que haya otorgado capitulaciones matrimoniales para que haya separación de bienes.

o de cualquiera de ellos, y los frutos, las rentas o los intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges. Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641.

Con respecto a esto último, en *García v. Montero Saldaña*, 107 D.P.R. 319, 330–331 (1978), señalamos que "[s]egún Borrell y Soler, con las 'locuciones *industria, sueldo y trabajo* se comprende ... todas las formas de retribuir la actividad productora del hombre, y todo ello quiere que se aporte al caudal común de los gananciales, ya se trate de trabajo manual o intelectual en todas sus manifestaciones de utilidad económica'. *Derecho Civil Español*, tomo IV, pág. 427; VI Puig Peña, *Compendio de Derecho Civil*, 192–193 (1965); Reyes Monterreal, *El Régimen Legal de Gananciales*, 161 (1962)". (Énfasis en el original.)

De lo anterior podemos colegir que en el caso de autos la reclamación, que es objeto de la demanda, le pertenece a la sociedad de gananciales, puesto que el ejemplar Dindi U pertenecía al patrimonio de dicha sociedad, por lo que cualquier compensación sobre dicho ejemplar le pertenece a ésta. Por ende, la reclamación debió instarse por la sociedad legal de gananciales. Recordemos que reiteradamente hemos establecido que la sociedad de gananciales es una *entidad separada y distinta* de los cónyuges que la componen. Véanse: *Universal Funding Corp. v. Registrador*, 133 D.P.R. 549 (1993); *Cruz Viera v. Registrador*, 118 D.P.R. 911 (1987); *Int'l Charter Mortgage Corp. v. Registrador*, 110 D.P.R. 862 (1981); *Rovira Tomás v. Srio. de Hacienda*, 88 D.P.R. 173 (1963); *Rivera v. Casiano*, 68 D.P.R. 190 (1948). La sociedad legal de gananciales no absorbe la personalidad individual de los cónyuges que la componen. Véase *Universal Funding Corp. v. Registrador*, supra. No ocurre tal eclipse de personalidad. *Int'l Charter Mortgage Corp. v. Registrador*, supra, pág. 867.

Resulta ilustrativo lo resuelto en *Franco v. Mayagüez Building, Inc.*, 108 D.P.R. 192, 195 (1978), en el cual señalamos que los "ingresos dejados de percibir constituyen por tanto una pérdida para la sociedad de gananciales que, siendo una entidad separada y distinta de los cónyuges que la componen —*Rovira Tomás v. Srio. de Hacienda*, [supra]— era quien tenía que reclamarla". En cuanto a esto último, la opinión mayoritaria indica que dicho caso es inaplicable toda vez que fue resuelto antes de las enmiendas a los artículos del Código Civil relativos al principio de igualdad conyugal, de coadministración, de investidura y de representación legal.

Sobre el particular debemos indicar que tales enmiendas no tuvieron el efecto de autorizar a un cónyuge a reclamar *para sí* una causa de acción perteneciente a la sociedad de gananciales, sino que mediante tal ley se autorizó a que *cualquiera* de los cónyuges compareciera *en representación* de la sociedad de gananciales. Nótese que antes de entrar en vigor tales enmiendas sólo el esposo tenía derecho a representar a la sociedad de gananciales, más para ello era necesario que incluyera a la sociedad de gananciales como parte de la acción, tal y como se resolvió en *Franco v. Mayagüez Building, Inc.*, supra. Las enmiendas meramente equipararon a ambos cónyuges, por lo que ahora ambos pueden representar a la sociedad de gananciales, *para lo cual deben incluir a esta última como parte de la causa de acción.*

Ciertamente el precedente establecido en la opinión mayoritaria es peligroso y podría ser perjudicial para aquel cónyuge que no sea parte en la causa de acción, toda vez que podría lesionar su participación en la sociedad de gananciales. Nótese que dicho precedente también podría ser utilizado cuando se trata de una situación en la que uno de los cónyuges haya sido demandado en su carácter personal, descubriéndose luego que es casado y que la res-

ponsabilidad podría imputársele a la sociedad de gananciales. Con el precedente que aquí se impone, no sería necesario emplazar a la sociedad de gananciales para hacerla responsable. Además, la opinión mayoritaria obvia la norma reiterada por este Tribunal de que la sociedad de gananciales es una entidad separada y distinta de los cónyuges que la componen.

De otra parte, el caso *Padró Collado v. Espada*, 111 D.P.R. 56 (1981), citado en la opinión mayoritaria, resulta distinguible al caso de autos. Allí se trataba de un acto de adquisición por parte del marido, el cual compró una participación de un negocio por un precio aplazado, incumpliendo con su pago. Resulta ilustrativo que allí *se incluyó como parte del pleito a la sociedad de gananciales*, así como a la esposa. Alegaron dichas partes que no habían dado su consentimiento para tal adquisición, resolviendo este Tribunal que la deuda contraída era un acto de administración de la sociedad, para lo cual no necesitaba la previa aprobación ni el concurso de su cónyuge, por lo que estaban obligados. *Nótese que para poder hacer efectiva la sentencia contra la sociedad de gananciales se incluyó a ésta como parte del pleito.*

Por otro lado, la opinión mayoritaria alega que la prueba enmendó y subsanó la omisión de la parte indispensable. Ello resulta totalmente erróneo. De un examen de los autos originales del caso, así como de la transcripción de la evidencia, surge que antes de celebrarse la vista en su fondo sobre el aspecto de negligencia la parte demandada presentó una moción de desestimación y/o sentencia sumaria en la que adujo que la yegua era un bien ganancial, por lo que era la sociedad de gananciales quien tenía que reclamar los daños. *Antes de comenzar el desfile de la prueba* la parte demandada trajo a la atención del tribunal de instancia dicha moción, siendo denegada. Además, *no se pasó prueba alguna sobre el carácter ganancial*

*de la reclamación*, por lo que es incorrecto afirmar que la prueba haya enmendado las alegaciones.

Cabe destacar que en el caso de autos la reclamación fue presentada por el Sr. Víctor Urbino en su carácter personal. No se trata aquí de una reclamación interpuesta por el señor Urbino en representación de la sociedad de gananciales, según lo autorizan los Arts. 91 y 93 del Código Civil, *supra*. La inclusión de la sociedad de gananciales era necesaria toda vez que, según antes indicáramos, reiteradamente hemos resuelto que ésta es una *entidad separada y distinta de los cónyuges que la componen*, sin absorber la personalidad individual de sus miembros. Véase *Universal Funding Corp. v. Registrador*, supra, y casos allí citados. Incluso en su alegato el señor Urbino insiste que le corresponde instar la acción por estar a su nombre la licencia expedida por la Administración de Deporte Hípico, lo cual según discutiremos más adelante carece de validez alguna. De ahí que el señor Urbino no tenga capacidad para instar para sí tal reclamación, puesto que ésta pertenece a la sociedad de gananciales, no habiendo comparecido éste en representación de ella.

Claro está, la no inclusión de la sociedad de gananciales como parte demandante no tiene el efecto que le atribuye la parte demandada. La Regla 15.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III,[3] provee, en lo pertinente, que "[n]o se desestimará un pleito por razón de no tramitarse a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la radicación del pleito, o se una al mismo, o se sustituya en lugar del promovente y *tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiere incoado por la persona con derecho*". (Énfasis

---

[3] Equivalente a la Regla 17(a) de Procedimiento Civil federal, 28 U.S.C.

suplido.) Por ende, procede que se revoquen las sentencias recurridas y se ordene la inclusión como parte demandante a la sociedad de gananciales compuesta entre Víctor Urbino y Esther Bidot Almodóvar, cuya unión o sustitución, en virtud de lo dispuesto en la citada Regla 15.1 de Procedimiento Civil, se retrotraerá a la fecha cuando el demandante Urbino instó la acción por daños y perjuicios.[4] No obstante, no es necesario ordenar la inclusión de la señora Esther Bidot Almodóvar, como parte indispensable en el pleito, puesto que a tenor con lo dispuesto en los Arts. 91 y 93 del Código Civil, *supra*, cualquiera de los cónyuges puede representar legalmente a la sociedad conyugal.

Por último, debemos mencionar que carecen de validez legal los argumentos esgrimidos por la parte demandante recurrida en cuanto a que fueron renunciadas las defensas presentadas por la parte demandada recurrente sobre la falta de partes indispensables, así como la de que la acción deja de exponer una reclamación que justifique la concesión de un remedio. La Regla 10.8(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, provee expresamente que "[l]a defensa de haber dejado de exponer una reclamación que justifique la concesión de un remedio, la defensa de haber omitido acumular una parte indispensable como se dispone en la Regla 16, y la objeción de haber omitido exponer una defensa legal a una reclamación, pueden hacerse mediante cualquier alegación permitida u ordenada según lo dispuesto en la Regla 5.1, o mediante moción para que se dicte sentencia por las alegaciones, *o en el juicio*". (Énfasis suplido.)

También carece de validez legal el argumento de la parte demandante recurrida en cuanto a que la licencia

---

[4] Véanse: *Cummings v. United States*, 704 F.2d 437 (9no Cir. 1983); *Hess v. Eddy*, 689 F.2d 977 (11mo Cir. 1982); *Wadsworth v. United States Postal Service*, 511 F.2d 64 (7mo Cir. 1975); 6A *Wright, Miller and Kane, Federal Practice and Procedure: Civil 2d* Sec. 1555, págs. 411–419 (1990).

emitida por la Administración de Deporte Hípico para participar en dicho deporte había sido expedida al demandante Víctor Urbino y no a la sociedad de gananciales, por lo que los daños concedidos por el tribunal de instancia son propiedad de la persona bajo la cual aparece registrada la licencia en la Administración del Deporte Hípico, esto es, el demandante Víctor Urbino, por lo que es éste último la parte interesada y con capacidad en el caso de autos. Claramente no le asiste la razón, puesto que el Art. 1301 del Código Civil, *supra*, define como bien ganancial aquel adquirido por un título oneroso durante el matrimonio a costa del caudal común, *bien se haga la adquisición para la comunidad o para uno solo de los esposos.*

Por los fundamentos antes expuestos, disentimos de la opinión mayoritaria de este Tribunal. En cambio revocaríamos las sentencias recurridas y devolveríamos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí expuesto.